**In re The MARRIAGE OF D. M. S.,**
**Petitioner-Respondent,**

**and**

**P. E. S., Respondent-Appellant.**
**No. WD 33192.**

Missouri Court of Appeals,
Western District.

March 1, 1983.

David Lee Wells (argued), Loydene A. Brock, North Kansas City, for respondent-appellant.

Darwin E. Johnson (argued), Jane E. Hart, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, for petitioner-respondent.

Before NUGENT, P.J., and KENNEDY and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

P_____ S_____ ("wife" or "mother") appeals from the judgment of the circuit court ordering her former husband ("father") to pay child support for their son J_____ of $900 per month for May through August and $200 per month for September through April. Child support for son A_____ was set at $900 per month. The husband was also ordered to pay education and medical expenses. She challenges the decree as grossly inadequate and an abuse of discretion; asserts that the order requiring the husband to pay educational expenses directly to his son's college rather than to her was error; and that the trial court incorrectly set the effective date of the judgment. We affirm the amount of the trial court's order, but remand solely for entry of judgment making child support for J_____ effective December 8, 1980.

The parties were divorced in 1973. Custody of the three minor sons, D_____, J_____ and A_____, was awarded to the wife and the husband was ordered to pay child support of $650 per month per child, plus $1000 per month maintenance. The 1973 decree has been modified three times. On September 8, 1976, custody of J_____ was transferred to his father and accordingly, he was relieved of his responsibility to pay child support for J_____. On December 30, 1976, maintenance was terminated due to the wife's remarriage. On August 21, 1979, custody of the oldest son, D_____, was transferred to his father and again, child support for this son ceased. So, by late 1979, the wife had custody of only one son, A_____, and was receiving $650 per month child support.

In October, 1980, J_____ was hospitalized for alcoholism and drug dependency. After six weeks, his psychiatrist's recommendation was that he either be institutionalized or released to his mother's care and receive out-patient treatment. He went home with his mother, and remained in her custody from that day forward.

On December 8, 1980, the mother filed an application for transfer of J_____'s custody and for an increase in child support for J_____, then 18, and A_____, then 14. She amended her application on July 2, 1981.

On August 6, 1981, the court issued an order of consent judgment on expenses, ordering the father to pay the children's medical expenses already incurred by the mother in the amount of $6528. A judgment entry issued on that same date transferred custody of J_____ to his mother effective July 1, 1981, and awarded child support for J_____ of $900 per month for July and August, 1981, $200 per month for September through April, 1982, and $900 per month for May through August and $200 per month for September through April for all future years. The father was also ordered to pay all future medical expenses for both sons and to pay a designated university $5890 for J_____'s expenses in the 1981–82 school year. The court re-

tained jurisdiction to determine college expenses for all subsequent academic years. Child support for A_____ was increased to $900 per month.

On appeal, the wife raises the following points: (1) the child support award was an abuse of discretion because it failed to consider the standard of living of the children, the financial resources of the father, or the needs of the children, and it was grossly inadequate because the lowest amount testified to as necessary to satisfy the needs of the children was $1000 per month each; (2) the order to pay J_____'s college expenses directly to his college interferes with the mother's right as custodial parent to control the child, fosters litigation, is unenforceable and unlawfully directs payment of child support to a third party; and (3) the effective date of the child support order, July 1, 1981, failed to consider that J_____ had lived with his mother from November, 1980, and that the husband had the obligation to support the boy during this time.

The factors which the wife claims the trial court failed to consider in her first point all derive from § 452.340 [1] which directs the court to consider the following factors in determining child support:

(1) The father's primary responsibility for support of his child;

(2) The financial resources of the child;

(3) The financial resources of the custodial parent;

(4) *The standard of living the child would have enjoyed had the marriage not been dissolved;*

(5) *The physical and emotional condition of the child, and his educational needs;* and

(6) *The financial resources and needs of the noncustodial parent.* (Emphasis added.)

Her position is that because the father has a substantial discretionary income and because her sons have certain extraordinary needs as a result of A_____'s potential

learning disability and J_____'s alcoholism and drug dependency, the support award is grossly inadequate. She estimated that A_____'s monthly expenses total $2051 and J_____'s total $2807, and sought that amount in her amended motion (an annual total of $58,308). The annual total actually awarded for J_____ (including college expenses) was $11,090 or an average of $926 per month. For A_____ the annual total was $10,800 or $900 per month.

■ In determining whether this amount is adequate, we note that the amount of child support awarded rests within the sound discretion of the trial court. *Larison v. Larison,* 524 S.W.2d 159 (Mo.App.1975). We must defer to that court's judgment unless the evidence is "palpably insufficient" to support it. *D_____ M_____ S_____ v. P_____ E_____ S_____,* 526 S.W.2d 361, 362 (Mo.App.1975). We find no such palpable insufficiency here.

■ First, the wife's estimated monthly expenses of over $2000 per child included $390 in food per month for each boy, even though J_____ is away at school for eight months a year. In addition, she included as part of J_____'s away-from-home school expenses, $475 per month for allowance, "extra food cost" and car expenses, in addition to both the $5890 annual college cost which included board and the $410 per month she estimated to be necessary to purchase J_____'s car. The trial court may well have found these overlapping provisions for food expenses to be unjustified.

The wife testified as well that each of her sons required $3600 per year for clothing although the husband testified that J_____'s annual bills for clothing while in his custody were between $500 and $700.

Although she claimed that she needed $33,684 per year for J_____'s support, the father testified that the cost of his support for D_____, the oldest son, had totalled $25,714.83 for two years plus "summer expenses", or $12,857 "plus" per year.

---

1. All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

Because we may not reassess the credibility of witnesses, we must accept the trial court's apparent judgment that the husband's estimates were more credible than the wife's and represented the lifestyle J_____ and A_____ would have enjoyed in their father's custody. *See* § 452.340(4). Although it exceeds the amount awarded to each of the boys by several thousand dollars annually, that discrepancy may be accounted for by the fact that although D_____ attended an expensive private college, J_____ planned to attend his university at a lower tuition, and A_____ did not yet attend college. Even absent this difference (which was disputed at oral argument), we do not find the discrepancy to constitute manifest abuse of discretion on these facts.

The mother's concern that the award does not consider her sons' special needs as required by § 452.340(5) overlooks the fact that any cost of special treatment required for J_____'s chemical dependency will have to be paid by his father as part of the court's order that he pay all future medical expenses.

■ Further, the court's order does not indicate that it failed to consider the resources of the father as required by § 452.-340(6). Although the mother set the father's discretionary income at $207,000 per year, this result was obtained from an after-tax salary of $118,056 to which her accountant added a number of adjustments including contributions made to a pension plan by his solely-owned corporation and maintenance paid to his second wife by her former husband. Whatever figure was used by the trial court, we cannot say that a total child support award of $21,890 per year plus medical expenses failed to take into account that the noncustodial parent was a man of some means. Just as this court refused to do when this couple appealed the original child support award, we will not review the awarded amount simply because the evidence indicates that the father's income is great enough that he may be able to afford more. *D_____ M_____ S_____ v. P_____ E_____ S_____, supra,* at 363. The financial resources of the fa-

ther comprise but one of the factors which the trial court must consider. *Guignon v. Guignon,* 579 S.W.2d 664, 666 (Mo.App. 1979). The primary concern in any child support case—the welfare of the children—seems to have been adequately provided for by the court's order.

■ Moreover, the trial court was under no obligation to require the father, the noncustodial parent, to pay for all of the boys' support. The mother may also be called upon to provide what support she can. § 452.340(3). *See also Brueggemann v. Brueggemann,* 551 S.W.2d 853, 859 (Mo. App.1977) (en banc), where an award of $150 per month was held adequate because of the mother's financial status even though the evidence showed a need for $183 a month. Here although the mother represented her monthly net income at trial as only $932, she also received $500 per month maintenance from her second former husband. Under these circumstances, although her financial situation is hardly equal to the father's, we cannot say that the trial court erred in expecting her to make some contribution to the boys' support.

■ The wife's second contention is that the court's order directing the father to pay J_____'s college expenses directly to his university rather than to her interferes with her right as custodial parent to control her child, fosters litigation, is unenforceable, and unlawfully directs payment to a third party. The Missouri Supreme Court's recent decision in *Toomey v. Toomey,* 636 S.W.2d 313 (Mo.1982) (en banc), answers most of these arguments. There, the court found that paying money directly to a university does not interfere with the right of the custodial parent to make educational decisions and that such "third party" orders are within the discretion of the trial court. This is particularly so here where the order does not prevent the mother from choosing a different institution for her son in later years and, in fact, gives her complete control over all education-related decisions other than how to make payment. Because the $5890 amount which the father was ordered to pay J_____'s university for aca-

demic year 1981–82 covered only tuition, fees, books, room and board, she remains free to control her son and his performance at college by limiting or expanding his spending money and automobile privileges as she wishes.

■ As to the question of whether such an order is so indefinite as to be unenforceable, we look again to *Toomey v. Toomey, supra,* at 315–16. There, the court's order required the father to pay "all private school or college tuition and housing costs, said sum to total no less than $665 per month; said sums to be paid directly to the respective educational institutions ...." The $665 figure represented the average monthly amount the father was then paying for his children's education. Although the payment was to be made directly to the institutions, the court held that the obligation was enforceable by execution by Mrs. Toomey for the $665 monthly minimum and could be modified by her on a showing that the expenses had increased. Here, the order requires the father to pay the specified university, "on or before August 12, 1981, the sum of $5890.00 as and for tuition, fees, books, room and board for the academic school year September, 1981 through April, 1982." Because this amount is even more definite than that ordered in *Toomey* and because the *Toomey* decision makes clear that the custodial parent may enforce this amount by execution, we find no merit in this point.

Although the wife is correct that by putting the order in this form and retaining jurisdiction to determine college expenses each academic year, the trial court may have made repeated returns to the court necessary, we find that in this case, no abuse of discretion is shown by this order. J_____'s history of alcohol and drug-related problems, his poor grades in his last year of high school, and his expressed interest in another university all make the possibility of a change in his educational status significant. Accordingly, the trial court chose to limit payment to a specific amount for 1981–82 rather than require the father to pay all academic expenses each year, what-

ever that figure might be. Not only do we find this to be within the trial court's discretion, we note that an all-encompassing order "to pay all sums necessary for ... college ... tuition, books, room and board" has been held to be so indefinite as to be unenforceable. *Loomstein v. Mercantile Trust National Assoc.,* 507 S.W.2d 669, 670–71 (Mo.App.1974).

The amount of the trial court's order, then, is affirmed. We next consider the effective date of that order. The wife contends that the trial court committed a manifest abuse of discretion in setting the effective date at July 1, 1981, rather than December 8, 1980, the date of the motion to modify. She argues that because she had custody of J_____ from November 21, 1980, following his release from the hospital, she was entitled to reimbursement for the cost of his support from approximately that date.

■ The determination of the effective date of an order on a motion to modify at any time after the date of filing rests within the discretion of the trial court. We must defer to that court's decision absent a clear abuse of discretion. *Brown v. Brown,* 537 S.W.2d 434, 437–38 (Mo.App.1976). Here, as to the modification of the amount of child support for A_____, we find no evidence of such abuse. The record does not indicate that the father deliberately slowed down or delayed the hearing in this case. Absent such a showing or other indication of abuse, we must affirm the lower court. *Miller v. Miller,* 599 S.W.2d 237, 239 (Mo.App.1980).

■ The effective date for child support for J_____ is more troublesome. For him, this is not a matter of an *increase* in child support, but a *reinstatement* of child support, discontinued when his father took custody in 1976. The father's relief from the obligation to pay child support in 1976 was, of course, premised on his direct payment of J_____'s expenses while the boy resided with him. From the date in late 1980 when the mother regained custody, this premise no longer applied. The father was neither paying child support to her nor paying

J_____'s expenses himself. Although this non-payment did not violate any then-existing court order, it was contrary to his common law duty to support his child.[2]

■ In Missouri, when a decree is silent as to child support or where the judgment for child support has become ineffective, a mother has a common law right to recover from the father the necessary and reasonable support and maintenance furnished by her for a child. *Pourney v. Seabaugh,* 604 S.W.2d 646, 650 (Mo.App.1980). Although we find no Missouri case directly in point, we are persuaded that this right must extend to a situation where a provision for child support is lacking because the father has been awarded custody but has given up that responsibility to the mother, leaving her without benefit of child support, and where no other circumstances falling within the exceptions to the common law duty exist.[3] In that regard, we must reject the husband's attempts to characterize the wife's custody as "wrongfully and surreptitiously obtained," a characterization which he says relieves him of his obligation. The transcript shows that in late November, 1980 when J_____ was to be released from the hospital, his psychiatrist recommended that he either be placed in an institution or released to his mother's care and receive out-patient therapy. His father's custody

was not recommended because of "intense conflict" between father and son. When J_____ chose his mother's custody, the boy's father, according to the psychiatrist, "said something to the effect that he was going to probably do what he wanted to anyway, so go ahead and do it, which appeared to be some kind of consent." On these facts, we cannot agree that the mother's custody was "wrongful" and in fact, we would find more "wrong" in a mother's refusal to take custody under these circumstances. Apparently, she had little choice.

■ We hold that in making the decree of child support for J_____ effective July 1, 1981, rather than December 8, 1980, the date of the motion to modify, the trial court improperly overlooked the father's duty to support his child and abused its discretion in totally relieving the father of this duty from December 8, 1980, to July 1, 1981.[4] We emphasize again that this situation is entirely distinguishable from a court's refusal to initiate an increase in child support prior to the date of hearing. There, such a refusal does not free a father of his duty to support his children, but merely fixes the date at which an increase in that burden is effective. By contrast, the trial court's order here entirely relieved the father of any obligation to support his child for seven months. Although circumstances may on occasion exist which justify total relief

2. The father of minor children has the "primary common-law duty and obligation" to support those children, "regardless of whether there is in force a valid order of court requiring him to do so." When an order does exist, it determines the amount of the father's liability and is, in effect, a substitution for the common law liability which would otherwise exist. *Lodahl v. Papenberg,* 277 S.W.2d 548, 550–51 (Mo. 1955). *See Federbush v. Mark Twain Parkway Bank,* 575 S.W.2d 829 (Mo.App.1978). *See also Gardine v. Cottey,* 360 Mo. 681, 230 S.W.2d 731, 750 (1950) (en banc) (stating that although the court's power to grant custody, maintenance, etc., is of "purely statutory creation," a judgment for support substitutes for common law liability).

3. As to what those circumstances might be, *see Williams v. Williams,* 510 S.W.2d 452 (Mo. 1974) (en banc) (relieving a father of his duty to support two children in his former wife's custody where he had custody of two other children of the marriage and the parties' finan-

cial situations were nearly identical); and *Broemmer v. Broemmer,* 219 S.W.2d 300, 303 (Mo. App.1949) (listing as exceptions to the father's common law liability situations where a child is emancipated, where the mother has contracted to support the child, or where the mother wrongfully obtains custody and voluntarily supports the child).

4. We note that *Clark v. Routt,* 453 S.W.2d 656 (Mo.App.1970), held that a former wife may seek an award for child support pre-dating the date of judgment on modification (i.e. "retroactive" child support) only by maintaining an independent action not part of the modification action. This holding is inapplicable now, however, because the rules on which it was based, Rules 88.03 and 88.07, were repealed, effective January 1, 1974, and were replaced with § 452.370 permitting modification of support installments "accruing subsequent to" the filing of the motion.

from the father's primary duty, see footnote three, no such circumstances exist here. On the facts before us, the order was not within the trial court's discretion.

Having so decided, we must consider whether to remand this cause to the trial court for determination of the appropriate amount of support from December 8, 1980, through July 1, 1981, or whether we may determine the amount ourselves. Remand for further evidence is only necessary in the absence of a complete record on which we can rely for a fair and accurate final disposition. *B_____ v. L_____,* 558 S.W.2d 738 (Mo.App.1977). Here, where the trial court has already heard extensive testimony on the cost of maintaining J_____ for the very period at issue and has determined that the cost of his support during the months he is at home is $900 per month, we see no reason to require the court to rehear evidence on the issue.

Accordingly, the cause is remanded to the trial court for entry of judgment making the order for child support for J_____ effective as of December 8, 1980, entitling the wife to $900 per month from that date through June 30, 1981, in addition to the trial court's award beginning on July 1, 1981. In all other respects, we affirm the judgment of the trial court.

All concur.