Mary  Hart  MASTIN,
Petitioner-Respondent,

v.

Kenneth Stephen MASTIN,
Respondent-Appellant.

No. 49745.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 13, 1986.

John B. Gray, Clayton, for respondent-appellant.

Susan M. Hais, Clayton, for petitioner-respondent.

PUDLOWSKI, Judge.

In this marriage dissolution case, the husband appeals the trial court's decision based upon an allegation of abuse of discretion. We affirm the judgment of the trial court.

The parties were married in St. Louis in 1973. During the first three years of the marriage, the wife, who had previously earned a college degree, was employed and the husband attended college in New Mexico. To supplement their income, the husband worked occasionally and his father sent them some money. Moreover, they received quarterly interest from a Revocable Living Trust that the husband had established prior to the marriage with assets that were given to him by his father. The value of these trust assets was in excess of $200,000. In addition, the husband owned a fifty per cent interest in a family business known as Lau-Ken Corporation which was liquidated during the marriage and provided an additional $196,000 in cash.

Shortly after the marriage, the wife deposited her personal securities, which were valued at approximately $11,400 in the Revocable Trust. In addition to the trust, the couple had a joint checking account in St. Louis into which the income from the trust was automatically transferred and a joint passbook savings account.

When the husband finished college, the couple moved to Memphis where the husband had accepted a job. They purchased a modest home and transferred their passbook savings account to a local bank. The trust and checking accounts remained in St. Louis as they had previously. While the couple was living in Memphis, a new account was opened with Merrill Lynch, in order to earn a higher rate of return. Funds from their joint accounts were transferred to this new account. The wife testified that it was titled only in the husband's name to expedite the purchase and sale of securities.

In the fall of 1977, the husband was transferred to Louisiana. They purchased a home, which they still own and are currently renting, and they transferred their savings account and Merrill Lynch account. A few months later, their only child was born. The husband's earnings from his job peaked during this period at approximately $32,000 per year plus a car and a generous expense account.

At some time in the spring of 1980, the husband's behavior changed. He became involved with other women, asked for a divorce and left the family for a period of six months. He began to dress bizarrely,

wearing symbols of black magic and carrying weapons, and he announced that he was the "Center of the Universe". Twice the wife contracted venereal disease from her husband. During his absence, the wife found receipts for gifts for other women and pornographic video tapes and magazines in the home.

The husband liquidated the Revocable Trust in December of 1980 and deposited the proceeds in a special Merrill Lynch account that contained marital funds. Later the funds were separated into several Merrill Lynch accounts. It appears that there was more than $400,000 in the Merrill Lynch accounts in 1980. About this time, the husband introduced his wife to a couple named Ron Woods and Nancy Hook. With the encouragement of these new friends, the husband invested approximately $70,000 in a topless strip bar. The husband's employer was unhappy about the investment in the bar and requested that he rid himself of his connection with it by Christmas of 1981. Rather than comply, the husband quit his job. The investment was disastrous; the bar was eventually closed after Ron Woods and Nancy Hook disappeared and the husband proved unable to manage the establishment on his own.

In 1981 the husband formed a corporation called SMK Enterprises, Inc. to invest in rental property. Approximately $60,000 went into the corporation in the form of stock purchases and loans. The corporation's cash was kept in a separate account at Merrill Lynch and used to purchase five rental homes. The wife owned some shares in this corporation although the exact percentage is disputed. The corporation is still operational.

In a period of one year, most of the assets of the family had disappeared. The husband first claimed he had lost them in the commodities market, but later he asserted in his deposition that he "blew" $280,000 "on wine, women and song." At the trial, he testified that he could account for all but fifty to sixty thousand dollars of the money. The wife alleged that he had hidden the money.

In 1982, the couple, who had reconciled, returned to St. Louis where the bulk of their remaining assets were used to pay $90,000 for a new home. The husband worked for a time as a commissioned insurance agent, but he was unable to successfully develop this business. As a result, he sold his interest in it in 1984. Since that time, his only employment has been as a part-time construction worker earning approximately $200 per week before taxes.

Since the dissolution proceedings began, the wife has been supporting herself from the savings that she accumulated during the marriage from annual $6,000 gifts the husband had given her in four previous years as part of an estate plan. In addition, she did some part-time work, but she found working difficult because of their young son's asthma.

At the time of the divorce proceeding, the only known assets of the couple were divided as follows:

To the wife

| | | |
|---|---|---|
| 1) | Family home | $100,000 |
| 2) | Furniture and furnishings | 15,000 |
| 3) | 1981 Mercedes automobile | 13,500 |
| 4) | Wife's savings account | 18,000 |

To the husband

| | | |
|---|---|---|
| 1) | Any separate property (inheritance) | $ 0 |
| 2) | All shares of SMK stock | 35,000 |
| 3) | 1979 Ford Thunderbird automobile | 2,000 |
| 4) | Furniture and equipment | 6,000 |
| 5) | Home in Louisiana | 47,500 |
| 6) | Account receivable from insurance business | 1,500 |
| 7) | Account receivable from Mr. Drury | 5,000 |

In addition, the husband was required to pay $10,000 to the wife as a settlement and $6,000 to the wife's attorney for her legal fees. The husband timely filed a motion to amend the judgment or in the alternative for a new trial. The court overruled these motions, but on its own motion amended the judgment to find the value of SMK Enterprises, Inc. to be $25,000 rather than $35,000 and to reduce to $5,000 the judgment of $10,000 that the husband was to pay to the wife. This appeal followed.

The husband raises five points on appeal: (1) that the trial court erred in awarding maintenance to the wife; (2) that the child support granted was excessive; (3) that the court failed to set aside his separate property; (4) that the division of marital property was inequitable; and (5) that the award of attorney's fees to the wife and the failure to award attorney's fees to the husband was error.

We will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). No findings of fact or conclusions of law were requested in this case, and as a consequence none were provided by the court. When the court does not provide specific findings on fact issues, we consider that they have been determined in accordance with the result reached by the trial court. Rule 73.01; *Stark v. Stark*, 539 S.W.2d 779, 781 (Mo.App.1976). In addition, considerable deference will be given to the trial court's ability to judge the credibility of the witnesses. *Rasmussen v. Rasmussen*, 627 S.W.2d 117, 120 (Mo.App.1982).

The husband first contends that the award of maintenance was error under the circumstances. Although the wife has a college degree and had previously taught school, she had not been regularly employed since the couple left New Mexico in 1976. After the birth of their son, the wife remained at home to care for the child who is currently elementary school age. The wife testified as to the difficulty she was having in finding employment due to the son's health and the fact that her certification for teaching was not current. Despite this problem, she was working on a part-time basis during the school year.

■ There is an emphasis on self-sufficiency in the dissolution law, however, it does not require that the court ignore the fact that a marriage did exist. *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977). In many marriages, both parties are satisfied if the wife remains at home to raise the children, foregoing a career for many years, and in such circumstances, the court may consider traditional factors such as lifestyle and duration of the marriage in computing any award of maintenance necessary to provide for the party's reasonable needs. *Id.* If the wife's circumstances should change, the husband's recourse is to institute a proceeding to modify the decree. *In re Marriage of Powers*, 527 S.W.2d 949, 955–6 (Mo.App. 1975).

■ The husband also complains that his economic situation is less favorable than that of the wife and that he will be unable to meet the demands of the maintenance imposed by the court. Direct proof of present employment and income is not the only evidence of a party's ability to pay an award of maintenance. *Reeber v. Reeber*, 680 S.W.2d 358, 360 (Mo.App.1984). The court may impute an income to the husband by considering his education, skill, potential and previous earnings record. *Id.* Moreover, the decree gave the husband income producing property, including the former home in Louisiana and SMK Enterprises, Inc., which provide additional income.

■ Section 452.335.1, RSMo 1978, provides that in a dissolution proceeding, a court may grant maintenance only if it finds that the party seeking such support "(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

In this case the bulk of the assets which were awarded to the wife were not income producing and her current employment was of a temporary, part-time nature due to her lack of recent experience and the fact that she had custody of a young child. These facts are sufficient to meet the threshold criteria of the statute; we, therefore, find

no abuse of discretion in the trial court's decision to grant maintenance to the wife.

The husband's second assertion is that the award of $300 per month in child support is excessive. Section 452.340, RSMo 1978, lists some relevant factors in setting a reasonable amount of child support. They include:

(1) The father's primary responsibility for support of his child;

(2) The financial resources of the child;

(3) The financial resources of the custodial parent;

(4) The standard of living the child would have enjoyed had the marriage not been dissolved;

(5) The physical and emotional condition of the child, and his educational needs; and

(6) The financial resources and needs of the noncustodial parent.

Although at the time of the trial the child had an UGMA account with a balance of $9,764.02 in the name of the wife as custodian which could be expended for his support, the evidence indicates that other factors were considered. The child was accustomed to a comfortable lifestyle and a private school education. Moreover, he requires considerable medical care for his asthma. The father had not provided medical insurance for the child for months prior to the dissolution decree nor had he paid his medical bills. Although a trust fund established by the husband's father was to provide for the child's education, the wife had not been reimbursed for her payment of the son's tuition. Instead, the trustee had paid the amount due to the husband increasing the funds available to him for the support of the child.

■■■■ As with the order of maintenance, the past, present and anticipated earning capacity of the parties may be considered by the trial court. *Klinge v. Klinge*, 554 S.W.2d 474, 476 (Mo.App.1977). The award is based on the reasonable needs of this child and the proven ability of the father to provide this level of support. Unlike the recent case of *Bonskowski v. Bonskowski*, 700 S.W.2d 99 (Mo.App.1985), we are not dealing with an earning capacity which is based on the purely speculative prospects of completing an education and being licensed. Although the award is substantial, it can not be said to amount to an abuse of discretion.

■■■■ The third claim of error the husband makes is that the court failed to set aside SMK Enterprises, Inc. as his separate property. The stock in this corporation was purchased with funds titled only in the husband's name. Nevertheless, the Merrill Lynch account, from which SMK Enterprises, Inc. was financed, was acquired subsequent to the marriage; therefore, the account is presumptively marital regardless of how it is titled. Section 452.330.3, RSMo 1978. The spouse who claims that the property in question is separate property "has the burden to rebut the presumption by clear and convincing evidence." *Boyce v. Boyce*, 694 S.W.2d 288, 291 (Mo.App. 1985). Evidence showing that the account was acquired in exchange for property acquired prior to the marriage would be sufficient to rebut the presumption. Section 452.330.3, RSMo 1978. Assuming that the husband was able to present sufficient evidence to overcome the presumption, the trial court in the absence of the marital property presumption, was still required to decide on the basis of the conflicting evidence presented what the status of the account was. *In re Marriage of Badalamenti*, 566 S.W.2d 229, 235–36 (Mo.App. 1978). There was sufficient evidence of commingling of marital and non-marital funds to support the trial court in its finding that the Merrill Lynch account which financed SMK Enterprises, Inc. was marital property. Under the circumstances and with due deference to the trial court's ability to assess the credibility of the witnesses, we find no error in the determination that the interest in the corporation was marital property.

The husband's fourth complaint is that the division of marital property was in error because of the trial court's evaluation

of the assets and the disproportionate division of the marital property.

■ Appellate courts should not disturb the property distribution in a dissolution case unless there is convincing evidence of an abuse of discretion. *Budzinski v. Budzinski*, 632 S.W.2d 527, 530 (Mo.App.1982). In the distribution of property just division is not synonymous with equal division. *Reeber v. Reeber*, 680 S.W.2d 358, 360 (Mo. App.1984).

Section 452.330, RSMo 1978, includes among its list of relevant factors the desirability of awarding the family home to the custodial spouse and the conduct of the parties during the marriage.

■ There are no precise guidelines for the weight to be given to the conduct factor, but we have previously noted that when the conduct of one party results in the other party being burdened beyond what is normal in the relationship, the conduct factor becomes more significant. *Burtscher v. Burtscher*, 563 S.W.2d 526, 527 (Mo.App.1978). In this case, the wife was required to alter the lifestyle to which she was accustomed and was physically injured on two occasions as a direct result of the husband's marital misconduct. The record also indicate serious financial misdeeds on the husband's part. Although the division of marital property is heavily weighted in favor of the wife, it is not without precedent. *Arp v. Arp*, 572 S.W.2d 232, 235 (Mo.App.1978); *In re Marriage of Sharp*, 630 S.W.2d 588, 590 (Mo. App.1982). In *Arp*, the court upheld a similar split of the marital property based upon two factors which are also prominent in this case. Both cases involved substantial and serious misconduct. Both also granted most of the income producing property to the spouse who received the smaller portion of marital property. We find no abuse of discretion in the trial court's consideration of this evidence nor in its evaluation of the property as that evaluation was based upon the trial court's assessment of the credibility of the witnesses.

The husband also contends that the trial court abused its discretion when it ordered him to pay $6,000 in fees to the wife's attorney. He suggests that the court should have ordered the wife to pay his attorney's fees because she had been awarded all the liquid marital assets.

The case of *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979), interpreted Section 452.355, RSMo 1978, to require that the courts consider other relevant factors in addition to the financial resources of the parties in the award of attorney's fees. The statute does not require that the wife be unable to pay the cost of the litigation in order to sustain such an award. *Id.* at 918. Trial judges have considerable discretion in the award of attorney's fees, and in this case that discretion has not been abused.

In summary, under the standard of *Murphy v. Carron, supra*, we will not substitute our judgment for that of the trial court who was in the position to judge the credibility of the witnesses. Because the decree is supported by substantial evidence, applies the correct law to the facts and is not against the weight of the evidence, the dissolution decree is affirmed.

CRANDALL, P.J., and KELLY, J., concur.