**Mark Davis NEWPORT, Appellant,**

v.

**Vicki Lynn NEWPORT, Respondent.**

**No. 15426.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 6, 1988.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 28, 1988.

John S. Pratt, Pratt & Fossard, Springfield, for appellant.

C. Ronald Baird, David A. Fielder, Dorr, Baird and Lightner, P.C., Springfield, for respondent.

HOLSTEIN, Chief Judge.

Appellant Mark Davis Newport and respondent Vicki Lynn Newport were divorced by a decree of the Circuit Court of Greene County entered September 3, 1987. Mark appeals claiming seven different points of error in which he asserts the trial court abused its discretion in (1) awarding excessive maintenance, (2) failing to establish a termination date for periodic maintenance, (3) awarding excessive attorneys' fees and suit fees, (4) awarding paralegal expenses and fees, (5) ordering appellant to pay for the college education of the children, (6) ordering Mark to maintain a $100,-000 life insurance policy for the benefit of the children, and (7) ordering Mark to pay all medical and dental expenses for the children.

The decree will be sustained unless the record reveals no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 62 (Mo. banc 1983). The trial court has broad discretion in determining the amount of maintenance and child support. *Colabianchi v. Colabianchi, supra*, at 66. The award of attorneys' fees and costs, after consideration of all relevant factors, is also within the sound discretion of the trial court. *Costley v. Costley*, 717 S.W.2d 540, 545 (Mo.App. 1986). Consequently, the trial court's orders regarding costs and attorneys' fees, maintenance, and child support will not be disturbed unless there is a manifest abuse of discretion.

### MOTION TO DISMISS THE APPEAL

■ Before reaching the merits of the appeal, we consider Vicki's motion to dismiss the appeal. She asserts, by way of affidavit, that appellant has voluntarily made maintenance payments of $3,000 per month as provided in the decree since the time of the dissolution. She cites *Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. banc 1983) and *Missouri Highway & Transportation Comm'n. v. Chadwell*, 735 S.W.2d 96, 98 (Mo.App.1987) for the proposition that when a party voluntarily pays a judgment rendered against him, he may not appeal from that judgment. We note Vicki's affidavit falls short of declaring that the judgment for both present and *future* maintenance payments has been satisfied. While Mark may have waived any complaint as to maintenance payments paid since the entry of the decree by paying those amounts, he has certainly not waived his right to appeal as to future payments. Consequently, Vicki's motion to

dismiss the appeal as to those portions of Mark's brief which question the award and amount of her maintenance is overruled.

## FACTS

The parties were married June 29, 1971, and lived together until their separation in October of 1985. Vicki was a college graduate at the time of the marriage. Mark continued his education during the first years of the marriage. He first attended Baylor University, graduating in 1971 shortly after the marriage of the parties. He then attended Southwest Baptist Theological Seminary for a year, after which he returned to Baylor University to complete premed courses. Mark graduated from the University of Missouri Medical School in 1977. He completed internship and began a residency in orthopedic surgery in Temple, Texas, and then switched specialties. Since 1980 he has been employed as an emergency room physician.

Mark's current employment is with a group of physicians called Trauma Physicians Association of Springfield, Inc. (hereafter "TPA"). Mark is a shareholder in that venture. TPA has a contract with St. John's Regional Medical Center under which it provides physicians for the hospital emergency facility.

Vicki was employed during the first several years of the marriage. Her employment included teaching school in Springfield, Missouri, Kennendale, Texas, Waco, Texas, and Columbia, Missouri. She also worked in a jewelry store and as a ward clerk in an emergency room while the couple lived in Columbia. Although Mark's father assisted with tuition, books, and auto expense prior to Mark entering the internship in 1977, the couple's primary support was earned by Vicki. Vicki continued to work for a time after Mark finished medical school, working at a day-care center, doing baby-sitting jobs, performing book research, and substitute teaching.

The parties are the parents of two boys, the first born on January 2, 1981, and the second born March 23, 1985. Since the birth of the children, Vicki has not worked. The couple reached a mutual decision that Vicki would stay in the home after the children were born.

From Vicki's perspective, the marriage began to erode while Mark was still in medical school. During that time, Mark developed a drinking problem and would stay away from home all night without explanation. These were the first signs of a change in Mark's moral and economic values. More recently, Mark became involved with a female companion who Mark met at a racquetball tournament. Both before and after the separation Mark spent substantial sums on travel expenses for he and his companion, as well as on gifts for her. At the time of trial, his female companion had moved to Springfield where Mark found her an apartment in the same complex in which he was living.

Mark admits that at one time he had problems in dealing with alcoholic beverages, but denies that was the immediate cause of the couple's problems. He complains that their problems stem from Vicki's frequent unwillingness to engage in sexual relations and her refusal to participate in any sexual relations following the conception of the second child. Mark also asserts that after the birth of the first child, Vicki permitted him to sleep in the bed between the couple, further inhibiting a sexual relationship. Mark complains that Vicki had centered so much of her attention on the children that she refused to hire a baby-sitter so the couple could go out socially and that Vicki was unwilling to travel with Mark on his numerous out-of-town trips for sports activities without the children.

Just as Mark denies that his relationship with his female companion was romantic prior to the separation, Vicki denies that she ever withdrew sexual relations from her husband and, in fact, Mark participated in permitting the children to sleep with them by refusing to take the older child to his own bed when she had requested Mark do so. Under Rule 73.01(c)(2),[1] we defer to

**1.** All rule references are to Missouri Rules of Court (19th ed. 1988) and unless otherwise indi-

the trial court's superior ability to judge credibility of the witnesses. To the extent that it is necessary to do so to support the trial court's judgment, we accept Vicki's testimony. Her testimony is supported by letters written by Mark in which he admits that "much of the problem is mine."

The marital assets of the parties include the family residence, household furnishings, automobiles, the TPA stock, Mark's retirement plan with TPA, and a checking account. The court awarded Mark marital assets, including the TPA stock, his automobile and the retirement plan with TPA, as well as the checking account and specific personal property, having a value of approximately $85,000 and ordered him to pay debts totaling $36,141. The court awarded Vicki marital property, including the family home and her automobile, which had a total value of approximately $184,-000. She was ordered to pay the debt secured by the home and the automobile which she received, totaling $132,608.38.

Mark's adjusted gross income from 1982 through 1986 ranged between $99,101 and $108,615. Mark claimed monthly living expenses at the time of the dissolution in the sum of about $3,800 and anticipated expenses of approximately $4,500 monthly. Among the expenses he claims are health insurance premiums, a $50,000 life insurance premium, continuing education benefits, and payments on Vicki's car.

Vicki's evidence indicated that her expenses, exclusive of expenses of the two children, amount to about $2,400. In addition, she claimed other expenses for herself and the children exceeding $2,000.

On this evidence, the court awarded Vicki $500 per month per child as child support and $3,000 per month in periodic maintenance. In addition, the trial court awarded attorneys' fees in the sum of $8,000, deposition costs in the sum of $329.60, expert fees of a CPA in the amount of $1,500, and a real estate appraiser in the sum of $175. Following the filing of the notice of appeal, the trial court entered an order sustaining a motion for attorneys' fees on appeal and ordering Mark

to pay an additional $3,000 in attorneys' fees. The parties' attorneys have filed excellent and informative briefs covering the seven points previously noted.

## THE AWARD OF SEPARATE MAINTENANCE

In his first point, Mark complains that the trial court should not have awarded any maintenance to Vicki. He concedes that the property Vicki received was insufficient to see to her reasonable needs. However, he argues that there is the additional requirement that Vicki prove she was either unable to support herself through appropriate employment or was the custodian of children whose condition or circumstances render it appropriate that the custodian not be required to seek employment outside the home. § 452.335.1(2). Mark reminds us that this emphasis in the law encourages self-sufficiency. He argues that there is nothing special about the condition and circumstances of these children which requires Vicki's presence at home, that there are many capable childcare alternatives available, and that any agreement which may have been reached by the parties that Vicki stay in the family home while the children were young does not demonstrate that "the *condition* or *circumstance* of the child *requires* the presence of the custodian in the home." This, of course, is a misstatement of the statutory standard. The statutory standard is met if the "condition or circumstances make it *appropriate*" that the custodian remain in the home.

■ There is an emphasis on self-sufficiency in the dissolution law, but that emphasis must give way to other considerations where the wife has remained at home, foregoing a career for many years, in order to care for young children. *Mastin v. Mastin,* 709 S.W.2d 545, 548 (Mo.App.1986). When the parties have adopted a lifestyle in which the husband works and the wife has stayed at home to care for small children, and, where it is economically feasible for the wife to continue to do so after the dissolution, it is appropriate that she not be

cated, all references to statutes are to RSMo, 1986.

required to seek employment outside the home. *See P.A.A. v. S.T.A.*, 592 S.W.2d 502, 504 (Mo.App.1979). The evidence here justifies an award of maintenance.

■ Mark also argues that the trial court, in determining the amount of maintenance, failed to consider the nonexclusive factors described in § 452.335.2. In his analysis of the evidence, Mark emphasizes the amount received by Vicki in the form of child support, her health, education and work experience, Mark's financial needs, and Vicki's alleged misconduct during the marriage. His analysis fails to note that during the marriage Vicki had foregone her career in education to stay home and care for the children, that the parties have established a very comfortable standard of living during the marriage, that years of education or experience will be required for Vicki to obtain appropriate employment to establish a similar standard of living, that this has been a fifteen year marriage, that Vicki might be at a disadvantage because of her age and her years outside the job market should she seek employment, and that Mark has substantial earning capacity.

Mark's argument also assumes the trial court believed all his evidence relating to Vicki's misconduct and all his evidence relating to his financial needs. Vicki denied the alleged misconduct. The trial judge found that she "has had good behavior and ... performed the tasks of wife and as mother." We defer to the judgment of the trial court on questions of credibility of witnesses. Rule 73.01(c)(2).

Similarly, the court may have discounted some of Mark's claimed financial needs. Of his claimed monthly expenses of about $3,800, he includes health insurance premiums, a $50,000 life insurance premium, continuing education expenses, and payment on Vicki's car. The health and life insurance premiums are reimbursed by TPA up to $6,000 annually, and education expenses are reimbursed completely by TPA. Under the decree, Mark is not required to make the payment on Vicki's car. Thus, the claim for Mark's monthly expenses may be reduced by over $1,200 from the amount claimed. In addition, the trial court may

have concluded that some of Mark's claims for expenses were somewhat inflated. For example, he claimed $400 per month for food, while the combined food expense of Vicki and the two children totals only $480. Mark also claimed $350 per month recreation which the court may have found to be excessive in view of Vicki's claim that the total of her and the children's social clubs, entertainment, and vacation expenses do not amount to that much each month.

Mark's argument also fails to take into consideration that the balance of $2,615, which he will have after payment of child support and maintenance, is the "after tax" amount of his income, while the $3,000 separate maintenance payment is the "before tax" amount available to Vicki. See 26 U.S.C.A. § 71 and § 215. Mark's first point is denied.

## DURATION OF SEPARATE MAINTENANCE

■ Mark's second point complains that the trial court should have limited the duration of the periodic maintenance. In support of this position, he cites *McDowell v. McDowell*, 670 S.W.2d 518 (Mo.App.1984) and *Salcedo v. Salcedo*, 693 S.W.2d 875 (Mo.App.1985). Mark apparently understands those cases to hold that rehabilitative maintenance of limited duration is mandated where there is a potential for a previously dependent spouse, through education and training and following the maturing of children, to support herself. That understanding is incorrect. Those cases simply hold that there is no abuse of discretion in granting rehabilitative maintenance of limited duration if the evidence demonstrates a reasonable expectation that the dependent spouse will have employment which will meet her economic needs should she seek it.

■ A limitation on the term of a maintenance award hinges upon whether there is substantial evidence at the time to justify imposition of the limitation. *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 802 (Mo. banc 1983). The record here does not show with any degree of certainty when Vicki might attain the earning capacity neces-

sary to satisfy her reasonable needs. The time when the children will mature to the point they no longer benefit from their mother's full-time presence in the home, when Vicki will be able to enter and complete additional education, and when she will be able to find appropriate employment are matters of speculation. Thus, the trial court here committed no abuse of discretion in failing to place time limits on the duration of periodic maintenance. *See Burrus v. Burrus*, 754 S.W.2d 882, 885–86 (Mo.App.1988).

## AWARD OF ATTORNEYS' FEES AND COSTS

■ In Mark's third point, he complains that the court erred in failing to consider "all relevant factors including the financial resources of both parties" in assessing attorneys' fees and costs. § 452.355.

In *Weiss v. Weiss*, 702 S.W.2d 948 (Mo. App.1986), the husband was ordered to pay over $13,600 of his wife's attorneys' fees and expenses of litigation. The court observed there that after deducting payments to the wife from the husband's monthly income, the funds available to both parties appeared to "fairly balance out." *Weiss, supra*, at 958. The court pointed out that the cost of litigation would have to be met from the marital property apportioned to the parties. The marital property in *Weiss* was divided almost equally. After payment of litigation costs, the husband was left with a disproportionately small amount of marital property. The court, therefore, found the trial court abused its discretion by obligating the husband to pay attorneys' fees and costs incurred by the wife.

In this case, as in *Weiss*, the available monthly income of Mark and Vicki will be nearly equal. The division of marital property is also nearly equal. However, financial resources are not the only factor the court is entitled to weigh. The court must weigh all relevant factors bearing on the imposition of the duty to pay attorneys' fees. *Kieffer v. Kieffer*, 590 S.W.2d 915, 918 (Mo. banc 1979). Only when the trial court is shown to have abused the broad discretion with which it is vested will an

award of attorneys' fees and costs be overturned. *In re Marriage of Medlock*, 749 S.W.2d 437, 446 (Mo.App.1988).

Here, Mark received the only income producing property, the corporate shares in TPA. Mark has a superior opportunity to generate additional income through his medical practice. In addition, he received the greater portion of the cash assets available to the couple. Mark also expended substantial marital funds for travel and gifts for his female companion. Such misconduct is a relevant factor in determining whether he should have funds available to pay his wife's attorneys' fees. *Hemphill v. Hemphill*, 710 S.W.2d 438, 439 (Mo.App. 1986). Under the circumstances, we cannot say the award of attorneys' fees and costs was an abuse of discretion.

## AWARD OF PARALEGAL FEES

Mark's fourth point complains that the trial court awarded $1,492.50 in paralegal fees. Among the exhibits admitted without objection was an itemized bill from Vicki's attorneys in the sum of $8,080.87. Of that amount, $1,492.50 is "paralegal fees."

■ Mark admits that the law of this state is that the court is expert in assessing the reasonableness and necessity of attorneys' fees. *Raines v. Raines*, 583 S.W.2d 564, 568 (Mo.App.1979). However, he claims that expertise does not extend to paralegal fees. We disagree. If the court is expert in determining the reasonableness of attorneys' fees, it is also reasonable to conclude that the court is able to determine the reasonableness of paralegal fees. A paralegal is an assistant that "act[s] for the lawyer in the rendition of [his] professional services" and is under his direct supervision. Rule 4, Rules of Professional Conduct Rule 5.3 & comment.

■ In this case there was direct evidence of the amount of Vicki's bill for attorneys' and paralegal fees. The itemized bill setting forth the time spent and charges made to Vicki was before the court. The attorney's statement of his charges admitted into evidence without ob-

jection, coupled with the presumptive expertise of the trial judge, constitutes sufficient evidence to justify allowing the award of $8,000 attorneys' fees which included paralegal fees. In cases in which attorneys' fees may be recovered, reasonable paralegal fees are allowable. *Hawkins v. Anheuser-Busch, Inc.*, 697 F.2d 810, 817 (8th Cir.1983). *See also S.R. v. S.M.R.*, 709 S.W.2d 910, 916 (Mo.App.1986).

## AWARD OF ALL MEDICAL, DENTAL AND COLLEGE EDUCATION EXPENSES

Mark's fifth and seventh points attack two aspects of the trial court's order which he asserts are so vague and uncertain as to be unenforceable and invalid. The first is the order of the trial court that Mark "pay for the college education of both minor children as he indicated at the time of trial of this case that he desires to do." The second order complained of requires Mark "to pay all medical and dental bills ... on said children."

■ As a general rule, a judgment or decree for child support must be sufficiently certain in its terms to be capable of enforcement by execution in the manner provided by law, and the decree must be in such form that the clerk may issue an execution upon which an officer is able to execute without requiring external proof and another hearing. *Pettigrew v. Pettigrew*, 619 S.W.2d 364, 365 (Mo.App.1981). Orders of support conditioned on attending college have been held unenforceable because those provisions of a child support order require a subsequent hearing. *In re Marriage of Hughes*, 734 S.W.2d 280, 282 (Mo.App.1987); *Sunderwirth v. Williams*, 553 S.W.2d 889, 894 (Mo.App.1977). Likewise, it has been held that orders requiring payment of unspecified medical expenses are unenforceable because external proof is required to ascertain the specific amount to be collected. *Rodden v. Rodden*, 527 S.W.2d 41, 43–44 (Mo.App.1975).

■ In Vicki's brief, she attempts to equate the situation here to the situation in *Fort v. Fort*, 670 S.W.2d 173 (Mo.App. 1984), in which the father testified that he believed it appropriate to keep a life insurance policy in effect on the youngest child. There the court upheld an order requiring the father to name the child as a beneficiary on $75,000 of his term life insurance. *Fort, supra*, at 175. *Fort* is distinguishable in that here Mark was expressing his intent under appropriate circumstances at some time in the future to provide for the childrens' college education, whereas in *Fort* the father had made a present declaration of his intent to name one of the children as a beneficiary of a life insurance policy then in force. In *Fort*, there was no question as to which insurance policy was involved or the extent of coverage.

Here, the unknown variable factors relating to "college education" and "all medical and dental expenses" are incapable of being identified with any degree of certainty. A subsequent hearing would be required to determine the conditions and amount of Mark's obligations. We conclude that the order requiring Mark to pay for the college education of the children and the order requiring Mark to pay "all dental and medical expenses of the minor children" are so vague as to be unenforceable and are void.[2]

Vicki's brief brings our attention to the fact that the most recent session of the General Assembly enacted a new § 452.340.5 which provides that "[i]f the child is attending an institution of vocational or higher education, the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs." H.B. 1272, et al, 84th Gen. Assembly, 2nd Sess., 1988 Mo.Legis.Serv. No. 4 (Vernon), at 554–55. The same legislation amended § 452.353.1 to read that "the court may require the obligor to obtain dependent health or dental insurance, or to be liable for reasonable and necessary medical or dental expenses of the child...." H.B. 1272, et al, 84th Gen. As-

---

2. Our holding is limited to the question presented. The order also required Mark to maintain the current medical and dental insurance for the children now provided by TPA. Mark does not challenge that provision of the trial court's order.

sembly, 2nd Sess. 1988 Mo.Legis.Serv. No. 4 (Vernon), at 555. While these provisions may be of some aid in the future should there be some need to modify the decree for support of the children, they were not in effect until August 13, 1988. The judgment was entered September 3, 1987.

## ORDER TO MAINTAIN LIFE INSURANCE

▆▆▆ Mark's sixth point is that the trial court erroneously ordered him to maintain a $100,000 life insurance policy naming the minor children as beneficiaries. This question has been addressed and resolved in favor of Mark in *Niederkorn v. Niederkorn*, 616 S.W.2d 529 (Mo.App.1981). There it was held that because of the common law rule that a father's duty to support terminates on his death and benefits of life insurance policies are not payable prior to death, a decree requiring that an insurance policy be kept in effect amounts to an order for posthumous child support and is invalid. *Niederkorn, supra,* at 538–39.

## CONCLUSION

We reverse those provisions of the trial court's judgment ordering appellant to pay for the college education of the minor children, ordering appellant to maintain a $100,000 life insurance policy naming the minor children as beneficiaries, and ordering appellant to pay all medical and dental expenses of the minor children. All other provisions of the decree and orders for attorneys' fees on appeal are affirmed.

CROW, P.J., and GREENE, J., concur.