**Douglas Harold ALLARD, Appellant,**

v.

**Constance T. ALLARD, Respondent.**

**No. WD 46424.**

Missouri Court of Appeals,
Western District.

April 20, 1993.

Samuel J. Short, Jr., Stockton, for appellant.

Bryan C. Breckenridge, Nevada, for respondent.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

SHANGLER, Judge.

The wife brought a motion, and the husband a cross-motion, to modify the order of dissolution of marriage entered in October 1985. The care and custody of the minor children born of the marriage, Douglas Harold Allard III, born November 15, 1972, and Christopher Corey Allard, born April 12, 1975, was awarded to the wife. The husband was ordered to pay through the Circuit Court of Vernon County $175 per month per child as support.

The dissolution decree incorporated into the judgment the separation agreement previously entered into by the parties. A term of the separation agreement provided:

OTHER CONTRACTUAL AGREEMENTS: Husband shall pay for a four-year college education for each of the children at a Missouri state-supported university which include room, board, tuition, books, college incidentals, and said child's necessary clothing. So long as Husband does pay those things, regarding a college education aforementioned, then the child support shall abate regarding said child. Husband shall maintain a policy of life insurance on himself payable to each child in an amount sufficient to insure this college education.... So long as Husband pays child support as provided herein or as otherwise modified by the court, Husband shall receive the federal and state tax exemptions for each child as a dependent and Wife shall not claim said exemptions on her tax returns.

The older son, Doug, commenced matriculation at Southwest Missouri State University [SMSU] in August 1991. The motions were heard in May 1992.

The wife's motion to modify came in three Counts. Count I sought the court to order the husband to pay the college ex-

penses of son Doug subject to offset of grant money, and for an attorney fee. Count II sought for the support order as to each child, Douglas and Corey, to be increased to a level compatible with the guidelines of Supreme Court Rule 88.01, based upon the present financial circumstances of the parents. The pleading also sought an attorney fee. Count III sought to enforce the obligation of the husband under the "Other Contractual Agreements" provision of the settlement agreement to pay, in lieu of child support, for a four-year college education of son Doug, then enrolled at SMSU. The pleading claimed that, in breach of agreement, the husband refused to pay the costs of a college education for Doug for the 1991–1992 school year, which amounted to $7787.

The husband answered Count I that son Doug was employed and so able to contribute towards his college expenses, that the income of the wife was such that she should also contribute towards Doug's college education, and that the husband lacked the resources to pay for an attorney. The husband asked the order of the court that the wife contribute to pay his attorney fee. The husband's answer to Count II was that he was presently paying child support to son Doug in excess of the Rule 88.01 guidelines, and pleaded also that all future child support payments be made payable directly to son Doug. The answer to Count III alleged that the college expenses pleaded did not take into account son Doug's earnings, grants and scholarships awarded to him, among other sums. It alleged also that the settlement agreement provision invoked by the wife allows the husband the option to pay either the college education costs or the $175 per month awarded as support for each child, and that one option abates the other.

The husband's cross-motion to modify, in effect, realleged for affirmative relief, the numerous grounds pleaded in the answer to the three counts of the wife's motion. It sought the court to modify the decree of dissolution so that (1) the husband pay all sums ordered for the support of son Doug directly to him; (2) the order of support for son Doug be made to conform to Rule 88.01; (3) the wife be required to pay a reasonable monthly sum towards the support of son Doug; and (4) the wife be ordered to pay a reasonable attorney fee for the husband.

The court sustained part of Count II and Count III of the wife's motion, and denied the husband's motion. As to Count II the court adjudged that there was no change of circumstance so substantial as to make the prior award of child support unreasonable under Rule 88.01. The court also determined that the wife was entitled to an award of a reasonable attorney fee against the husband. As to Count III the court adjudged $7450.50 in favor of the wife, the cost of son Doug's college education for his freshman year at SMSU. That sum was subject to a credit of $4575,[1] leaving a balance due of $2893.50.

The husband was denied any relief on his cross-motion.

Accordingly, the court entered these terms of judgment:

On the wife's motion:

Count I was denied.

On Count II, an award to the wife of $175 per month against the husband for the support of son Corey, with no further support due the wife if the husband "pay the costs of Corey's college education as he contractually agreed."

On Count II, an award to the wife against the husband for her attorney fee in the sum of $953.16.

On Count III, an award to the wife against the husband for $2893.50, the balance due for the costs of son Doug's freshman year at SMSU, payable with interest at 9% per annum, "with all sums due payable to the parties's son, Douglas Harold Allard III."

On the husband's cross-motion:

Relief was denied on the cross-motions.

The husband appeals the grant of relief to the wife on Count II and Count III of her motion. The husband argues that award of $953.16 as attorney fee for the wife against the husband under Count II was erroneous as an abuse of discretion. He argues also that the award of the college expenses for son Doug under Count III was erroneous because it was based on an agreement that is so vague as to be void and unenforceable.

The husband appeals also the denial of his cross-motion in that, in adjudicating the order in favor of the wife, the judgment failed to consider the earnings of son Doug while at college, loans and other resources available for those expenses, as well as the wife's "duties to assist in support," and established no criteria for course hours and satisfactory completion of academic work.

At the time the dissolution decree was entered in 1985, the wife was employed as a teacher's aide and the husband was with the Missouri State Highway Department. He also had a paper route with the Joplin Globe. In the last calendar year prior to the dissolution, 1984, the wife earned $4648. The husband earned $20,653 from his employment and $2798 from the paper route. The motions to modify were heard in May 1992. During 1991, the calendar year prior to the hearing the wife, now employed at a Nevada bank, earned $19,230. The husband earned $26,868 from his employment and showed a loss of $1279 from the paper route. The wife since February 1992 works some 57 hours per month at Nevada Mental Health Clinic with gross earnings of $242.45 per month.

The husband has made the child support payments of $175 per month per child and maintained health insurance on his two sons as the 1985 decree provided. The sons, Doug and Corey, have worked part-time since they were sixteen. Corey earned between $3000 and $3500 during

1991. Doug earned $7744.54 from three jobs during 1991. It included $1274 from employment at SMSU during his freshman year. There was no reason to expect that his earnings in 1992 would be any less than in 1991. Since Doug's enrollment in college in September of 1991, the husband has voluntarily increased the monthly support payment from $175 to $250 per month, and has paid the sum directly to son Doug. The father continued this payment during the summer months even when son Doug was not enrolled.[2]

It was the testimony of the husband that when the settlement agreement was executed, he anticipated that his son would receive scholarships, grants and loans for his college education, and also assist with his earnings. The wife agreed that it was contemplated that son Doug "would meet some of his college expenses through grants and other funds."

The wife learned of a plan at the First National Bank of Nevada, where she worked, a Plus Loan, whereby a parent could have a loan up to $4000 payable at $50 per month. It was not available, however, where the child earned more than $4000 during the year and was considered to be "independent," or emancipated. However, son Doug was eligible for, and received, a Pell grant of $1950, which was not required to be repaid. He also received a Stafford Loan of $2625, which is a student loan and does not have to be repaid until after graduation. Son Doug also received a $300 scholarship from Nevada TV Cable. The wife and son also borrowed $650 and then another $500 on another loan from the Nevada bank. The $650 note was repaid by son Doug, but the $500 remains unpaid. The wife has spent about $500 in clothing for son Doug during the past year and has also sent him $10 or $20 dollars per week when she could, and spent some $150 for incidental supplies.[3]

**2.** In the judgment the court gave the husband credit for the full $250 per month [or total of $3000] paid to the son during that time.

**3.** The husband calculates that the "total resources" available to son Doug during his freshman year at SMSU amounted to $16,769.54:

| | |
|---|---|
| Earnings | $7744.54 |
| Payments from Husband | 3000.00 |
| Pell Grant | 1950.00 |
| Stafford Loan | 2625.00 |
| Cable TV Scholarship | 300.00 |
| Clothes from Wife | 500.00 |
| School Supplies from Wife | 150.00 |
| Personal Loans of Son Doug | 500.00 |
| TOTAL | $16,769.54 |

In the first semester of his freshman year Doug enrolled for sixteen credit hours and completed eight. The second semester was not completed at the time of the hearing on the motions.

The first component of the first point on appeal argues that the trial court erred in modifying the support award under Count III of her motion because the judgment was based upon a provision of agreement that is so vague as to be void and unenforceable.[4] The provision impugned as too vague for enforcement is a component of the settlement agreement of the parties approved by the court as not unconscionable and incorporated into the judgment of dissolution. The exact terms of the provision in dispute are found in the OTHER CONTRACTUAL AGREEMENTS paragraph:

> Husband shall pay for a four-year college education for each of the children at a Missouri state-supported university which would include room, board, tuition, books, college incidentals, and said child's necessary clothing. So long as Husband does pay those things, regarding a college education aforementioned, then the child support shall abate regarding said child.

It is the sense of the argument that the last sentence, "[s]o long as Husband does pay those things, regarding a college education aforementioned, then the child support shall abate regarding said child," is the only definite expression of the monetary amount of the judgment, and so is the only enforceable aspect of the judgment entered in the dissolution decree of October 1985. Accordingly, that provision must be construed to specify a minimum sum of $175.00 per month per child for support and enforceable to that extent only. Otherwise, the argument goes, such a provision is too vague to be enforceable at all. That amount, the evidence shows, the husband has already paid. Hence—presumably—the judgment for $7,468.50 [less credits] entered under Count III, adjudicated as the obligation of the husband under the settlement agreement, is against the weight of the evidence.

The husband derives that rationale from *Toomey v. Toomey*, 636 S.W.2d 313 (Mo. banc 1982). In *Toomey*, the child support award required the husband "to pay for each child all private school or college tuition and housing costs, said sum to total no less than $665 per month." *Id.* at 315. The wife asserted that the order was void because the amount was too indefinite to be enforced by execution. The supreme court en banc in *Toomey* cited its decision in *Payne v. Payne*, 635 S.W.2d 18 (Mo. banc 1982), adopted just the month before, to comment that typical prior holdings to the effect that a support order that "the father pay all college expenses without mentioning any sum or method of computation ... [was] unenforceable by execution" were "of questionable authority" after *Bryson*. 636 S.W.2d at 316. *Payne* frankly adopted the rationale in *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App.1981), that where the amount of the award was only " 'facially uncertain,' the maintenance provision was valid because the trial court upon motion could determine the amount due." [5]

*Toomey* does not tolerate the meaning, as the husband's argument intimates, that

---

**4.** It is noted that the husband does *not* argue that the judgment of modification is itself vague or otherwise not amenable to enforcement. The adjudication of the wife's claim under Count III of the motion to modify, the breach of the settlement agreement provision by the husband to pay for son Doug's college education, was meticulously specific. The judgment rests on express findings that the costs of son Doug's freshman year at SMSU were: "room and board—$4,204.50, tuition—$2,214,00, books—$420.00, college incidentals—$130.00 and neces-

sary clothing—$500.00 for a total of $7,468.50." The judgment then expressly finds that the husband is entitled to the specified credits [already noted] against the sum adjudicated, leaving a balance due on the judgment of $2893.50.

**5.** The judgment in *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App.1981), was a judgment for maintenance, and not as here or in *Payne*, for child support. *Toomey* noted the distinction and held, nevertheless, that "the philosophy of the [*Bryson*] court in finding a method to enforce a decree is applicable here." 636 S.W.2d at 316.

the minimum support award of $175 per month per child is all that the terminology of the settlement agreement provision now before the court will sustain. *Toomey* holds, rather, that where the support judgment is only "facially uncertain," and the actual expenses exceed the specified minimum, the support provision is enforceable through a motion to determine the amount due. 636 S.W.2d at 316.

The authority of the supreme court en banc decisions in *Toomey* and *Payne* govern for our purposes, and they give their authority to *Bryson* by approval of that decision. *Bryson*, as do we, dealt with a provision in the separation agreement that was incorporated into the judgment. The question there was: "How can a maintenance payee enforce the maintenance provision of a separation agreement, incorporated into the decree under the statute, if the amount of the payment is uncertain?" [6] *Bryson* acknowledged the rule that a maintenance judgment "is indefinite, uncertain and unenforceable if the amount of the judgment cannot be ascertained without resort to external proof beyond the record or another hearing." 624 S.W.2d at 96[4].

*Bryson* notes that the Dissolution of Marriage Act changed the law, and with it, the reason for the rule that a maintenance order that is indefinite is void, and so unenforceable. Separation agreements in anticipation of dissolution, if not unconscionable, are now binding on the court. When incorporated into the judgment, they are "enforceable by all the remedies available for enforcement of a judgment." *Id.* at 96[5]; § 452.325.5, RSMo 1986. There is no assured way to enforce a maintenance judgment, entered in accordance with the statute, § 452.325.4(1), that is facially uncertain unless the trial court has the authority to determine the exact amount due. *Bryson*, 624 S.W.2d at 97. Accordingly, a

trial court should be able to ascertain by motion, and testimony if necessary, the amount of maintenance due under the terms of the property settlement agreement incorporated into the judgment. *Id.*

It is the express holding of *Bryson* that a maintenance provision of a decree is a valid and enforceable judgment even though facially uncertain in amount. "The trial court may upon motion determine the exact amount due in accordance with the agreement of the parties, and then, upon proper application proceed to enforce the judgment." *Id.* at 98.[7] The judgment of support here is no more facially uncertain than those in *Toomey* and *Bryson* and no less determinable, on motion, as to the exact amount due than in *Payne*. Whatever facial uncertainty inhered in the support payments for college expenses provision of the settlement agreement incorporated into the judgment was made definite by the motion and hearing which derived the exact amounts due under the judgment. *See also Witzke v. Witzke*, 662 S.W.2d 873, 874 (Mo.App.1983).

The husband argues, somewhat elliptically, that the judgment was also wrong because the court did not fashion a new support order altogether. A proper new order, the husband argues, would have required consideration of the earnings of the child for whose college support the order is fashioned, the loan funds and other resources available for the child, as well as the duty of the other parent [here the wife] to assist in the support, and criteria for course hours taken and satisfactory completion.

That argument is inapt, even on its own terms. The premise of the point on appeal is that the judgment of support entered by the trial court was erroneous because it rests upon an agreement that is so vague as to be void and unenforceable. Our opin-

---

**6.** The settlement agreement provided that the husband would pay to the wife "the sum of Three Hundred and Fifty ($350.00) Dollars per month for her support or a sum equal to Thirty–Three (33%) Per Cent of [husband's] gross income from wages, whichever is greater."

**7.** The proceeding of the wife, although brought as a motion to modify the judgment of dissolu-

tion, was in true effect a motion for the court to construe the support provision of the separation agreement incorporated into the judgment in order to determine the exact amount due from the husband, and to enforce the judgment. *Payne*, 635 S.W.2d at 23[3–6]; *Bryson*, 624 S.W.2d at 97; § 452.325.4,.5.

ion decides that under *Toomey, Payne* and *Bryson* the judgment, although facially uncertain as to the obligation of support it adjudicates, is amenable by motion and evidence to definite ascertainment. That is to say, the facially uncertain support judgment of 1985 based upon the separation agreement was made certain by the judgment under review, and now is enforceable. It is no longer vague, or "void," or unenforceable.

The argument for a new, enforceable order follows what the husband understands of a series of cases decided after *Toomey, Payne* and *Bryson.* They include *Newport v. Newport,* 759 S.W.2d 630 (Mo. App.1988), *Glassberg v. Obando,* 791 S.W.2d 486 (Mo.App.1990); *Echele v. Echele,* 782 S.W.2d 430 (Mo.App.1989). These cases persevere in both the terminology and rationale of the decisions antecedent to *Toomey, Payne* and *Bryson,* and ostensibly discredited by them.[8] Even under the husband's theory of the law, there was no occasion for the trial court to fashion a "new, proper order." Nor is there occasion for us to remand for that purpose. *See* fn. 8. The uncertainty in the judgment has already been made clear and, we determine, the judgment for child support is now enforceable.

In any event, the elements of a "new, proper order" that the husband argues would have defined his obligation to support in clear and definite terms are both superfluous and, in any event, were considerations already before the trial court as evidence. They are superfluous because not only Rule 88.01(a) & (b), but also § 452.340.1(1) & (2) direct that "the financial resources and needs of the child" and of both parents are factors in determining the amount of child support. *Mistler v. Mistler,* 816 S.W.2d 241, 255[14] (Mo.App. 1991). Thus, no new order was needed to define the husband's support obligation according to those terms. They are criteria imposed by law. Moreover, the financial needs and resources of both parents were already before the court. The financial resources of both children were also before the court. The earnings of son Doug during the 1991 freshman year at college were in evidence, as were the earnings of younger son Corey. Doug earned $7744.54 from three employments during that year. He also purchased a car, repaid a loan of $650 and was yet to repay another loan for $500. So also were the loan funds and other resources available to son Doug as a college student not only considered, but credited to the husband against the adjudicated obligation of support. These includ-

---

**8.** *Newport v. Newport,* 759 S.W.2d 630 (Mo.App. 1988), holds that an order of child support to pay for college education that requires a subsequent hearing to determine the amount of the obligation is too vague as to be unenforceable and is void. *Id.* at 637. *Newport* refused to give any effect to such a support order or to recognize the continued justiciability of the claim for support. *Newport* simply reversed the adjudication of support on such an order. *Newport* came to decision without reference to either *Toomey, Payne* or *Bryson,* or their common holding that a facially uncertain support judgment may be made certain by a hearing and evidence.

*Echele v. Echele,* 782 S.W.2d 430 (Mo.App. 1989) took a step beyond *Newport* and its kindred. Although such a support order is "void" if the subsequent hearing required to determine its meaning "involves discretion," the claim for support remains justiciable and the trial court should "fashion a proper order." *Id.* at 436–37. *See* also *Glassberg v. Obando,* 791 S.W.2d 486, 490[6] (Mo.App.1990); *Gable v. Gable,* 816 S.W.2d 287, 290[2] (Mo.App.1991). The newly

fashioned proper order, presumably, would define the obligation to support prospectively.

It is this procedure introduced by *Echele* that the husband claims was neglected by the trial court.

Our opinion determines that the agreement for child support incorporated into the judgment was amenable to being made certain by evidence, and was made certain and enforceable. There is no occasion, therefore, to remand to the trial court for a new "proper order" even under the husband's theory of the law of such judgments. Accordingly, there is no occasion or need to assess the validity of the *Echele* rationale and holdings. Nor need we address the seeming contradiction between the fundamental tenet of *Bryson*—and hence of *Toomey* and *Payne*—that, at least as to provisions for maintenance and support which have been incorporated into the judgment of dissolution, separation agreements, if not unconscionable, are binding on the court and are enforceable by all the remedies available for the enforcement of judgments. *Bryson,* 624 S.W.2d at 96[5]; § 452.325.5.

ed the Pell grant and a scholarship which totalled $2325.

The purpose of the adjudication was both to construe a facially uncertain child support provision of a separation agreement decreed as a judgment, and to make it certain by evidence. *Payne*, 635 S.W.2d at 22. In the course of that adjudication, there was the testimony by each, the wife and the husband, as to what the agreement intended. Their testimony agreed that it was contemplated that son Doug would meet some of his college expenses "through grants and other funds." The husband thought that Doug should contribute his earnings to the cost of his education. He thought also that the wife should "assist" with the educational expenses. These, however, were not expressed as sentiments or intentions that prompted the husband's agreement, but only as matters of principle.[9] It is evident from the remarks of the court at the end of the hearing that they were given consideration. The court concluded, nevertheless, that the contract entered into in 1985 was intended to "take the place of child support, "and that the agreement was to pay son Doug's "tuition, fees, books, room and board." [10]

The husband cannot argue that the agreement of the husband to pay for the cost of college tuition, room and board, books, college incidentals and necessary clothing, as the judgment decrees, does not rest on substantial evidence. The husband does not argue that the court did not take the evidence of the financial resources of the children and of both parents into account in the determination of the support awards. Nor, having done so, that the

judgment does not rest on substantial evidence.

One contention of the husband's multiform first point on appeal remains to be answered. The husband argues that the failure of the court to sustain his cross-motion to "modify and set his child support obligation in accordance with Supreme Court Rule 88.01 is contrary to public policy." The motion of the wife was to determine the child support due under the agreement to both sons, Doug and Corey. Doug was enrolled in college, Corey was not. The court determined that according to the guideline of Form 14, the presumptive child support per child was $319 per month. The court, after consideration of all relevant factors concluded, nevertheless, that the provision of the agreement decreed as a judgment in the dissolution order that the husband pay the wife $175 per month per child for support remained appropriate as to son Corey, and that an award for $7,468.50 [less credits] be entered as support for son Doug. That satisfied the "public policy" of Rule 88.01 and §§ 452.-340 & .370. *Campbell v. Campbell,* 811 S.W.2d 504, 506 (Mo.App.1991).

■ The second point on appeal contends that the award to the wife of an attorney fee was error because the wife had more disposable income after taxes than did the husband. He calculates the wife's disposable income at $21,139.02 and his own at $14,098.40, In addition, he calculates that the wife's long term liabilities to be "perhaps" $30,000, and his own at $64,098.40. He says the evidence shows that the wife was meeting her annual living expenses, but he was not. The husband's calculation of the wife's "disposable income" is suspect. It includes income from her second

9. The only construction that the husband contended for the OTHER CONTRACTUAL AGREEMENTS provision incorporated into the judgment was that by its terms he was given the option to pay $175 per month child support for each child or the cost of the college education, and that the exercise of one option abated the other. It was a contention rejected by the trial court.

10. The agreement of the parents under § 452.-325 as to child support cannot preclude the power of the court to set the amount of support

or to change the order as conditions change. It remains the special obligation of the judge who must act according to the evidence presented. *Williams v. Cole,* 590 S.W.2d 908, 911[2,3] (Mo. banc 1979); *Kocherov v. Kocherov,* 775 S.W.2d 539, 540[1] (Mo.App.1989). The parents' agreement as to the amount of support, nevertheless, "may be strong evidence to support a deviation from the amount calculated pursuant to the guidelines [of Rule 88.01]." *Rothfuss v. Whalen,* 812 S.W.2d 232, 240[15] (Mo.App.1991).

job at Nevada Mental Health Services where she has been paid $4.25 per hour for 57 hours during the month. The husband projects that figure into the annual wage of $2907, although that year was not yet over, that figure was not yet earned, and the tax returns for that year, 1992, were not yet available. The husband also includes in the "disposable income" the support money that she receives from him for son Corey.

The figures most favorable to the judgment show a monthly gross income to the wife less than ten dollars in excess of her $1714 monthly expenses.

■ The respective financial resources is but one factor to be considered in awarding attorney fees. *Kieffer v. Kieffer,* 590 S.W.2d 915, 919 (Mo. banc 1979). Another factor is the extent to which the other party's conduct required the attorney's fee expense. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 655[6] (Mo. banc 1989). Although the husband has argued to the trial court and now on appeal the proposition that the support judgment was vague, and thus "void" and nonenforceable, his insistence that the $175 per month per child support was, at his option, all that could be due from him, made the expense of litigation inevitable. His refusal to honor his written agreement to pay for a four-year college education for each of the children, to include room, board, tuition, books, college incidentals and necessary clothing—even if the agreement was colorably vulnerable as a legal obligation—was bound to instigate the suit of the wife. It was self-evident that, whatever the bona fides of the husband's position as to the agreement as a basis for an enforceable judgment, the obligation of the husband to support son Doug's freshman college year would substantially exceed $175 per month.

The allocation of the wife's $953.16 attorney fee expense to the husband was well within the discretion of the trial court under § 452.355. It is a discretion that will not be overturned in the absence of a manifest abuse. *In re Marriage of Stuart,* 805 S.W.2d 309, 314[14] (Mo.App.1991). The court of review presumes the correctness of a discretionary ruling, and the burden is on the complainant to prove that the decision was clearly against the logic of the circumstances and arbitrary. *Ederle v. Ederle,* 741 S.W.2d 883, 885[8,9] (Mo.App. 1987). This the husband has not done.

The judgment is affirmed.

All concur.