In re The Marriage of Alice
TOOMEY, Appellant,

v.

James Michael TOOMEY, Respondent.

No. 63433.

Supreme Court of Missouri,
En Banc.

July 6, 1982.

Daniel P. Card, II, Clayton, for appellant.

Charles Alan Seigel, Jay L. Levitch, St. Louis, for respondent.

SEILER, Judge.

This case was transferred from the court of appeals, eastern district, after opinion. This court granted transfer on the husband's application to consider two questions: 1) is a support award that provides for the husband to pay all educational expenses of children and sets a minimum figure unenforceable by execution and thus void; 2) is the fact of a prior marriage between the parties a relevant factor for the trial court to consider in awarding maintenance? Portions of the court of appeals opinion are used here without quotation marks.

The parties had been married for more than twenty years prior to their 1975 divorce in Connecticut.[1] Six children were born during this marriage. They remarried in Missouri on August 31, 1976. Wife filed a petition for dissolution on November 16, 1977, which was amended July 24, 1979. Four of the children were minors at the time of trial in the present action. Judgment was entered July 30, 1979.

At the time of trial, both parties were forty-nine years old. Respondent husband is a licensed physician employed by Washington University at Barnes Hospital and by the City of St. Louis at City Hospital. His gross income is $62,215.46. His monthly take-home pay after deductions which include $19.50 for life insurance and a $329.58 contribution toward a pension plan is $3,323.61. The $329.58 pension contribution is matched by Washington University. Wife is employed part-time as a hostess in a restaurant. Her gross income per month is $396.00 and her take-home pay is $314.00 per month. Husband's ordinary living expenses are approximately $1,509. Wife's estimate of her ordinary living expenses is $1,569. The cost of support for the four children is not clear. Wife listed $2,181 per month which allotted $691 to educational expenses. Husband put educational expenses at $645.53 per month. Wife's estimate of expenses for the children was incorrect in that it included the cost of food

for one of the emancipated children who was living with her.

The principal items of property are the family residence and husband's interest in the pension plan. The residence has a value of $140,000 to $170,000, subject to a deed of trust of $40,000. Husband's testimony was that the pension plan was "the California type" (with no explanation as to what he meant), that it shows "a total of $39,849", that it is designed for retirement at age 65 and that "you cannot borrow or take it out." There is nothing in the record as to how the $39,849 figure was arrived at, nor is there a copy of the pension plan or any of its provisions. Husband is indebted to a bank upon a note for $29,400. Other property consists of a checking account, automobiles, and household furnishings.

Wife had been a registered nurse, licensed in Connecticut. She has not practiced her profession for 22 years and her license apparently has expired. She had not been happy in the work and does not intend to follow the profession in the future. The trial court took judicial notice that reciprocity existed between Connecticut and Missouri respecting nurses. Husband testified that refresher courses in nursing are available to persons whose licenses have expired. There was no direct evidence of the status of wife's license, no evidence of availability of positions, and no evidence with respect to the income a nurse could expect to receive. She testified that she was content with her present employment because it allowed her to be with the children who were still at home.

The trial court awarded maintenance to the wife in the sum of $350 per month for a period of five years, which coincides with the youngest child reaching twenty-one. In dividing the property, the court ordered the residence be sold for at least $150,000 within six months and the net proceeds divided equally;[2] the pension fund, which had accumulated solely during the second marriage, was set aside to the husband without

---

1. The exact date of the original marriage and of the divorce do not appear in the record.

2. This order has been stayed during the appeal.

indicating whether or not it was marital property. The court granted custody of the minor children to wife and made an award of $150 per month as support for each of the four minor children ($600 total). The court made an additional award for support which requires the husband to pay all educational expenses.

Wife appeals the educational expense award which reads in part as follows:

> In addition, Respondent to pay for each child all private school or college tuition and housing costs, said sum to total no less than $665 per month; said sums to be paid directly to the respective educational institutions at such time as Respondent receives statements therefor.

Petitioner wife asserts this order is void because the amount is too indefinite to be enforced by execution and, furthermore, invades the right of the custodial parent to determine how child support is to be allocated.

■ A trial court has broad discretion and flexibility in fashioning child support payments. The court must make an order that accommodates the needs of the minor children and the ability of the parents to meet those needs. *Matheus v. Matheus*, 612 S.W.2d 907, 908 (Mo.App.1981); *Allison v. Allison*, 540 S.W.2d 635, 636 (Mo.App.1976). It is apparent from the order that the trial court sought to make this accommodation.

At the time of trial, three of the minor children attended school.[3] The youngest two were in private high schools and one was in college. Dr. Toomey was paying an average of $665 a month for tuition and other expenses. Mrs. Toomey in her testimony indicated that she did not want to change the schools the children were attending, but wanted the money paid directly to her.[4] "I believe in education, but as far as that amount [$665] I think it is overdone." She testified that she wanted the children to get financial aid "because

there is so much available now ...." Dr. Toomey testified that he wanted to and was able to pay for the education expenses of any of the children. His testimony indicated that if his children wanted to attend college he would pay all expenses for the colleges his children selected. Also, his employer Washington University will pay up to $2300 annually for tuition for each child at any college or university.

■ We do not find that paying the money directly to the respective institutions interferes with the right of the custodial parent to make education decisions. The minimum amount due was for the amount currently paid by Dr. Toomey to the institutions the children were attending. The order to pay the institutions directly is sensible. In this manner, Dr. Toomey can make arrangements with the institutions of the best means to meet the expenses. Furthermore, many items of child support are made directly to a third party and it is within the discretion of the trial court to order accordingly. *E.g., In re Lineberry*, 9 B.R. 700, 706 (Bkrtcy.W.D.Mo.1981) (payments to orthodontist); *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 539 (Mo.App.1981) (payment to medical insurance company); *Biggs v. Biggs*, 397 S.W.2d 337, 338 (Mo.App.1965) (payments for private school tuition and camps).

■ The question remains whether the order is so indefinite as to the amount owed to be unenforceable by execution and thus void. The respondent was ordered to pay all tuition and housing costs, "said sum to total no less than $665 per month." As discussed above, the $665 figure represents the average monthly sum respondent was paying at the time of trial for the children's education.

*Loomstein v. Mercantile Trust National Ass'n*, 507 S.W.2d 669 (Mo.App.1974) and

---

3. The other minor child was unemployed and living at home. One of the emancipated children also lived at home.

4. "Q. And what you are telling the Court is that you would prefer that these payments be made to you in the form of maintenance or alimony, rather than being made in the furtherance of an unnecessary expense for education, is that right?
A. Right."

*Taylor v. Taylor*, 367 S.W.2d 58 (Mo.App. 1963), cited by appellant to support this contention, are distinguishable. In *Loomstein*, the provision to be enforced was that the father pay all college expenses without mentioning any sum or method of computation. The court held this to be unenforceable by execution, but added that the provision could well be a contractual obligation. *Taylor* was an attempt to enforce an alimony provision (25% of net income) under the old divorce law. Both cases are of questionable authority after the decision in *Bryson v. Bryson*, discussed below and *Payne v. Payne*, 635 S.W.2d 18 No. 63664 (Mo. banc 1982).

A similar argument was made in *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App.1981). There, the husband was to pay the wife maintenance of $350 a month "or a sum equal to 33 percent of respondent's gross income from wages, whichever was greater." *Id.* at 94. This provision had been part of a separation agreement incorporated into the decree and thus was enforceable as a judgment. The court of appeals held that, although the amount of maintenance award was "facially uncertain," the maintenance provision was valid because the trial court upon motion could determine the amount due. Although *Bryson* involved a maintenance rather than a child support award, the philosophy of the court in finding a method to enforce a decree is applicable here.

The order entered by the court is the *minimum* amount for which Dr. Toomey is obligated. He, of course, can pay more than this amount and from his testimony, it appears that it is his intention to pay more if the educational expenses are greater than $665 a month. If, however, Dr. Toomey fails in his obligation, Mrs. Toomey can bring an action on the judgment for $665 a month. If the expenses for education exceed $665, Mrs. Toomey can move in the trial court for modification of the order and introduce evidence of those increased expenses.

We hold that the order for child support is valid and affirm that portion of the trial court's judgment.

The remaining points on appeal concern whether the trial court erred in the division of property and in the amount of maintenance. For the reasons discussed below, the property division and maintenance awards are reversed and remanded.

■ This case presents an unusual factual situation. The parties had been married for more than twenty years during which time six children were born. They were divorced in 1975 in Connecticut. The Connecticut divorce decree provided that the family home was to be sold when the youngest child graduated from high school at which time the proceeds were to be divided equally between the parties. Before the house was sold pursuant to the divorce decree, the parties remarried and moved to Missouri.[5] The Connecticut house was then sold and the proceeds invested in the Missouri home. It is this house that is one of the two principal items of property owned by the parties.

During trial, Mrs. Toomey's attorney attempted to elicit testimony from her that she had been a homemaker during both marriages to illustrate her need for maintenance. Dr. Toomey's objection was promptly sustained with the trial judge commenting, "You are actually at this time, legally only married about three years." This exclusion of testimony was, in the circumstances of this case, error. Once the court determined maintenance should be awarded to the wife, § 452.335.1, RSMo 1978, the court in determining the amount of such award and for what period of time, was to consider "*all* relevant factors," § 452.335.2 (emphasis added), not merely the seven enumerated factors. During trial, other evidence of events occurring during or as a result of the first marriage was introduced without objection when it was relevant. The six children were all born during the

---

5. We were unable to discover any agency or source that keeps statistics on the incidence of second marriages between the same parties.

We have no reliable information on how often this occurs in Missouri or in the United States generally.

first marriage. This was relevant to the issue of child support. The family home was bought with the proceeds from the sale of the Connecticut home. This was relevant to the property division. Dr. Toomey introduced evidence of Mrs. Toomey's nursing license as relevant to her ability to support herself. Where, as here, children were born of the first long-term marriage and the wife was the homemaker, the financial, social and employment status of the parties has been influenced by the totality of their relationship. Under the circumstances before us, evidence of that first marriage is relevant to determine the amount of maintenance and for what period of time.

In connection with further proceedings in the trial court, we note that one of the major items of property is Dr. Toomey's pension plan through Washington University to which he and his employer each made monthly contributions of over $300 during the second marriage. The trial court set the pension plan aside to Dr. Toomey without making a determination in the record whether the pension is separate or marital property and without any support in the record we can find on which to base a determination either way. This is error because there is no method for determining on the record if the property division is equitable. On rehearing the parties are to furnish the trial court with a more accurate description of the pension plan and the husband's interest therein so the court can determine what sort of property it is and what the division, if any, should be.

That portion of the judgment pertaining to maintenance award and the property disposition is reversed and the cause is remanded for further proceedings in accordance with the foregoing.

DONNELLY, C. J., and MORGAN, HIGGINS and BARDGETT, JJ., concur.

RENDLEN, J., dissents in separate dissenting opinion filed. WELLIVER, J., dissents and concurs in separate dissenting opinion of RENDLEN, J.

RENDLEN, Judge, dissenting.

Married in August of 1976, the parties had lived together 15 months when the wife filed for dissolution on November 16, 1977. Judgment was entered July 30, 1979. During trial, the court noted that the parties had only been "legally ... married about three years" and ruled that evidence concerning appellant-wife's status as a homemaker during their prior marriage was irrelevant to the issue of maintenance. I believe the trial court properly ruled that under § 452.335.1, RSMo 1978, such evidence is not germane to the question of maintenance and accordingly I dissent from the majority's holding that "[u]nder the circumstances before us, evidence of that first marriage is relevant to determine the amount of maintenance and for what period of time." The majority cites no authority for this proposition but bases its conclusion on the notion that the previous conduct (before the 1975 divorce) of the parties, which includes their statuses as may have existed in a prior dissolved marriage, should weigh upon the husband's responsibility to provide maintenance and the wife's corresponding right to receive the same growing out of this marriage of three years' duration and in which merely 15 months passed until the dissolution action was commenced. The prior divorce determined all rights to alimony or maintenance for the marriage ending in 1975. The effect of that decree and any obligations for maintenance accruing therefrom ceased with the subsequent marriage in August, 1976. The majority cites no authority and none is suggested demonstrating there can be a tacking on or reaching back to the prior circumstances of divorced parties who later remarry, to provide a relevant factual basis for determining the extent and duration of maintenance arising from dissolution of the second marriage. To justify its conclusion the majority suggests that the fact that children were born of the prior marriage is relevant to the issue of child support renders evidence of the parties' prior status relevant to the current issue of maintenance. This begs the question inasmuch as the continuing duty

for child support survives the original divorce as well as the interim period when the parties were not married, the subsequent marriage and the present dissolution. Such is not the case with maintenance (alimony) which arises only from the existence of the marriage beginning in 1976 and terminating in 1979. Similarly the majority recites the fact the proceeds from the sale of the parties' previous Connecticut home was introduced, and concludes this justifies introducing evidence of the "totality of their relationship". It is true that if these proceeds exist as an asset of the parties, their present value (with that of other assets) is relevant to the question of maintenance. However, the readily apparent nexuses connecting (1) the fact six children were born of the prior marriage to the question of child support and (2) the current value of the parties' assets to the issue of maintenance, provide no such link between status in a prior marriage and maintenance stemming from a subsequent dissolution. We may not condemn, as the majority has done, the trial court for properly excluding this evidence as to the parties' circumstances during their first marriage, for such is irrelevant to the issue of maintenance. To the extent it is directed that such evidence be considered on rehearing, I respectfully dissent.