**Paul F. ECHELE,**
**Appellant/Cross–Respondent,**

v.

**Sheila K. ECHELE,**
**Respondent/Cross–Appellant.**

**Nos. 56067, 56166.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 26, 1989.

Rehearing Denied Jan. 24, 1990.

Claude C. Knight, Deborah Jean Tomich, Knight & Schoeneberg, St. Charles, for respondent/cross-appellant.

Nancy L. Schneider, Hazlewood, Barklage & Barklage, St. Charles, for appellant/cross-respondent.

JOSEPH J. SIMEONE, Senior Judge.

### I.

These are consolidated appeals by Paul F. Echele (husband), and Sheila K. Echele (wife), from an order of the circuit court of St. Charles County entered on December 30, 1988 after both parties filed motions to modify the original dissolution decree. The order (1) increased the child support payments made by Paul F. Echele, (2) required him to pay one-half of the cost of post-secondary education of the parties' two sons, (3) granted to Paul the right to claim one of the sons as a dependent for income tax

# 432

purposes, and (4) provided that each party was to be responsible for attorney fees.

We affirm in part and reverse and remand in part.

## II.

On November 12, 1985, a dissolution decree was entered dissolving the marriage of the parties. There were two sons born of the marriage—Todd Christopher Echele, born June 11, 1972, and Ryan Gregory Echele, born October 21, 1974. The mother, Sheila, was granted primary custody of the sons, and the father was granted certain rights of visitation and temporary custody. In the original decree, the father was ordered to pay one-half of the costs of tuition for the children to attend private school. The decree also ordered Paul to pay $51.50 per week per child as and for child support.

On March 15, 1988, Paul filed a motion to modify the original decree praying that (1) he be given primary custody of the children or in the alternative to grant him joint legal custody, (2) his obligation for child support be terminated, and (3) reasonable attorneys' fees be awarded.

On April 20, 1988, Sheila answered the motion to modify and filed a cross-motion stating that there have been changed circumstances since the original decree and prayed for (1) increased child support retroactive to the date of filing, (2) an order requiring Paul to be responsible for the payment of the reasonable expenses of a college education for both sons, (3) a modification of visitation and temporary custody, (4) an order requiring Paul to maintain a life insurance policy for the children, and (5) an order requiring Paul to pay her attorneys' fees.

A hearing was held on November 18, 1988 at which the two sons, and Paul and Sheila testified. At the hearing, Paul testified that his gross earnings from his employer were approximately $27,800 per year and that at the time of the dissolution, his earnings approximated $28,000 per year. Paul testified that since the original decree, he had remarried and that his present wife earned $424.00 per week. The

record shows that Sheila earns $385.00 per week from her employer, and an additional amount for part-time work. The record shows she earns approximately $18,400 per year. She also earns an additional $50.00 per week at a part-time position. Sheila has, according to her statement of income and expenses, expenses of $2602.00 per month, which includes $810 for the children. Paul's expenses are shown to be approximately $2295 per month.

At the hearing, Sheila testified that since the original decree the "basic expenses" for the children—clothing, food, education and activities—had increased because the sons had changed from "being grade school children to having one high school child." She testified that the cost of food had increased—"they eat as much as an adult;" and that since the sons have grown, they require adult size clothing. Since the elder son has reached sixteen years of age, he drives an automobile which necessitates insurance. Paul also recognized that the sons wear "adult size clothing" and on occasion "eat a lot." Sheila testified that she lacks the necessary financial resources to pay the cost of a college education. In Paul's testimony, he stated that he had talked to Todd about attending college and that he was desirous of Todd continuing his education after high school either at a vocational school where Todd had an interest, or a college. He testified that he would be willing to give financial help for college education and has "no problem" with assisting Todd. He also testified that he "hoped" the boys would go to college. Sheila testified that she did not have the ability to pay her own attorneys' fees amounting to some $1,300.00.

The record indicates, from the testimony of the children that their parents do not get along very well, and that it would be difficult for them to make joint decisions. At the hearing, Paul requested a tax exemption for one of the children in the event the court ordered an increase in the child support payments.

On December 30, 1988, the court entered its order of modification. The order was filed on January 5, 1989. The court found

that since the entry of the original decree of dissolution there have been substantial and continuing changed circumstances. The court found that the costs of maintaining and educating the two children have increased substantially; that the sons have grown and have needs "well in excess of their needs at the time of the entry of the Decree" and the costs of supplying those needs have risen, since the sons are older, and have indicated a desire and ability to go on to post-secondary education. The court therefore ordered that (1) Paul pay $71.50 per week, per child for increased child support and maintenance retroactive to August 1, 1988, (2) commencing with the 1989 tax year, that Paul have the right to claim Todd as a dependent for income tax purposes, (3) Paul pay one-half of the cost of "vocational/technical school or one-half the cost of post-secondary education at a state supported college or university with respect to each of the parties' minor children. Said cost shall include the cost of tuition, books, and room and board." The order continued:

> In the event either or both parties' minor children choose to attend a private college or university, then [Paul] shall be responsible for one-third the cost of tuition, books and dormitory fees (room and board) of said college or university. [Paul's] payments ... shall be made ... to the school, college or university where the child or children are attending. . . .

The order also required each party to pay the respective attorneys' fees.

## III.

On appeal, appellant-husband contends that the trial court erred (1) in ordering him to pay one-half or one-third of the cost of post-secondary education because the order is not based on substantial evidence and is an erroneous application of the law in that the amounts (a) are dependent upon some future contingency and are indefinite and uncertain and incapable of being identified with any certainty, and (b) are void and unenforceable because the amounts require a subsequent hearing to determine the amount actually owed; (2) in ordering him to pay a portion of the college expenses

without abating his obligation to pay the increased amount of child support, and (3) in ordering him to pay an increased amount of child support because the increase is not based upon substantial evidence, or is against the weight of the evidence or is an erroneous application of the law.

Cross-appellant, wife, contends on this appeal that the trial court erred in granting Paul the right to claim Todd as a dependent for income tax purposes and in failing to award her her reasonable attorney fees.

## IV.

We initially note our standard of review: (1) the order of the trial court will be sustained unless the record reveals no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Colabianchi v. Colabianchi,* 646 S.W.2d 61, 62 (Mo. banc 1983); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); (2) the trial court has broad discretion in determining the amount of child support; and (3) the award of attorneys' fees and costs is within the sound discretion of a trial court. *Costley v. Costley,* 717 S.W.2d 540, 545 (Mo.App.1986); *Newport v. Newport,* 759 S.W.2d 630, 632 (Mo.App.1988).

As to appellant-husband's first point that the court erred in ordering him to pay one-half or one-third of the cost of post-secondary education including tuition, books and dormitory fees (room and board), he contends that the order is dependent upon some future contingency and the order is indefinite and uncertain and cannot be made definite or certain from the record, hence the order is unenforceable and void. He relies upon a number of decisions.

To resolve this issue, we must analyze the complex law in this area.

In *Newport v. Newport, supra,* the court stated:

> As a general rule, a judgment or decree for child support must be sufficiently certain in its terms to be capable of enforcement by execution in the manner provided by law, and the decree must be in such form that the clerk may issue an

execution upon which an officer is able to execute without requiring external proof at another hearing.

*Newport v. Newport,* 759 S.W.2d at 637.

As a general rule, therefore, a judgment must be definite and certain as to the amount for which it is rendered. *Loomstein v. Mercantile Trust National Ass'n,* 507 S.W.2d 669, 670 (Mo.App.1974). The order, it has been said, must be sufficiently certain without requiring external proof of another hearing in order to be enforceable. *Tepper v. Tepper,* 763 S.W.2d 726, 727 (Mo. App.1989). In *Pettigrew v. Pettigrew,* 619 S.W.2d 364, 365 (Mo.App.1981), the court held that a decree for child support must be sufficiently certain in its terms to be capable of enforcement by execution in the manner provided by law, and if a judgment or decree does not satisfy this requirement of certainty, it is null, void, and unenforceable. *See also, Newport v. Newport, supra,* 759 S.W.2d at 637. In *Meyer v. Meyer,* 599 S.W.2d 6, 7 (Mo.App.1980), this court stated that a money judgment must specify with certainty the amount for which it is rendered or if the amount is not stated it must be ascertainable from the record. *See also, Brolinson v. Brolinson,* 564 S.W.2d 911, 913 (Mo.App.1978); *Sunderwirth v. Williams,* 553 S.W.2d 889, 894 (Mo.App. 1977); *Rodden v. Rodden,* 527 S.W.2d 41, 43–44 (Mo.App.1975) and *Bishop v. Bishop,* 151 S.W.2d 553, 557 (Mo.App.1941).

Under these principles, many Missouri authorities have held a decree indefinite and uncertain so as to be unenforceable. Recently in *Newport v. Newport, supra,* 759 S.W.2d 630, the Western District held that an order requiring the husband to "pay for college education" as the husband indicated his desire to do so at trial and to "pay all medical bills" was too indefinite and uncertain so as to be enforceable.

In *Pettigrew, supra,* a decree ordering child support "in event child loses employment, child support to be increased provided child remains in school" was contingent and uncertain. In *Loomstein, supra,* the court held, upon a motion to quash execution, that the order requiring the payment of "all sums necessary for daughter's col-lege and graduate school" unenforceable. *Meyer v. Meyer, supra,* similarly held that, upon a motion to quash execution, an order to pay "all medical and dental expenses and all necessary costs of schools including tuition, books and expenses" was invalid. Recently, this court in *Tepper v. Tepper, supra,* held that a decree ordering the payment of "all school payments for children" to be void.

However, these principles have been eroded in several respects in recent years. Beginning with this court's decision in *Bryson v. Bryson,* 624 S.W.2d 92 (Mo.App. 1981) and approved by our Supreme Court in *Payne v. Payne,* 635 S.W.2d 18 (Mo. banc 1982), and *Toomey v. Toomey,* 636 S.W.2d 313 (Mo. banc 1982) (a child support case), it has been held that, although the decree is "facially uncertain," if a separation agreement is incorporated into the decree, or if a decree can be made certain upon motion and hearing where the amounts are made certain, the decree is not so indefinite so as to be unenforceable.

In *Bryson, supra,* the wife appealed from the trial court's unfavorable summary judgment in a declaratory judgment action in which she sought a declaration of rights under a separation agreement pursuant to a decree of dissolution. The trial court ruled that the provision of the separation agreement relating to maintenance was un-enforceable because it lacked sufficient certainty. The agreement provided that the husband would pay maintenance in the sum of $350 per month "or a sum equal to thirty-three (33%) Per Cent of [husband's] gross income from wages, whichever is greater." Although the decree was void for lack of certainty, and although the court stated that under the law prior to the Dissolution of Marriage Act, the judgment would have been unenforceable because the amount due was not definite, this court held that the wife was not barred from collecting maintenance. This court held that the wife had a remedy and "can place before the court evidence of the exact amount due under the terms of the separation agreement incorporated into the decree. The statute, § 452.325.4(1) R.S.Mo.,

provides that the parties shall be ordered to perform the obligations of the agreement. There is no way to enforce this maintenance decree unless the trial court has the authority to determine the exact amount due." *Bryson* held that the wife could present evidence of husband's gross income from wages and the trial court could determine the exact amount due, a simple computation. Having done so, the court could enforce that judgment. *Bryson*, 624 S.W.2d at 97. The terms of a separation agreement incorporated into a decree are enforceable as a judgment. "This court goes a step further ... and holds the main-. tenance provision of the decree to be valid and enforceable even though facially uncertain in amount. The trial court may upon motion determine the exact amount due in accordance with the agreement of the parties, and then, upon proper application proceed to enforce the judgment." 624 S.W.2d at 98. What would have been enforceable as a contract under the old divorce law is by statute enforceable by the court as part of the decree under the new law.

In *Payne v. Payne, supra,* 635 S.W.2d 18, the Supreme Court approved *Bryson.* In *Payne,* a property settlement agreement was incorporated in the dissolution decree requiring the husband to pay $120 weekly to the wife for support and maintenance, "plus 15% of the sum of husband's total income for the preceding year [as shown on Federal Tax forms] minus $6,240.00." The Supreme Court held that the maintenance provision in the settlement requiring reference to the husband's annual income to determine the precise amount due at any given time was not void because based upon a contingency and because execution could not issue without external proof. The court held this provision to be valid and that the trial court "properly received the [husband's] income tax returns ... to determine the exact amount due under the dissolution decree." The court further held that a party may move to determine the exact amount due and, after making that determination enforce the judgment.

In *Toomey v. Toomey, supra,* 636 S.W.2d 313, the Supreme Court approved the procedure in *Bryson* relating to a child support decree. The court had before it two issues: (1) is a support award that provides for the husband to pay all educational expenses of children and sets a minimum figure unenforceable and void, and (2) is the fact of a prior marriage between the parties a relevant factor to consider in awarding maintenance? The trial court awarded maintenance to the wife, granted custody of the minor children to the wife and made an additional award for support which required the husband to pay "for each child all private school or college tuition and housing costs, said sum to total no less than $665 per month; said sums to be paid directly to the respective educational institutions ..." *Id.* at 315. The wife appealed and contended that the order invades her right to determine how child support is to be allocated and because the amount is too indefinite to be enforced. The Supreme Court held that a trial court has broad discretion and flexibility in fashioning child support payments. The husband had testified that if the children wanted to attend college he would pay all expenses.

The Supreme Court addressed the question whether the order was so indefinite as to the amounts owed so as to be unenforceable by execution and thus void. The court noted that *Loomstein v. Mercantile Trust National Ass'n, supra,* 507 S.W.2d 669, and *Taylor v. Taylor,* 367 S.W.2d 58 (Mo. App.1963) may both be of questionable authority after *Bryson v. Bryson, supra.* The court held that the order was valid, but, as to enforcement, the court noted that if husband failed to pay the $665 a month, wife "can bring an action on the judgment for $665 a month." The court also noted that if the costs exceed $665 a month, wife "can move in the trial court for modification of the order." *Id.* at 316. Thus, the specific sum of $665 a month was enforceable; the other general language requires a motion to modify. In *Toomey,* there was no separation agreement incorporated into the decree as in *Bryson.*

In *Witzke v. Witzke,* 662 S.W.2d 873 (Mo.App.1983), this court held that a clause

in a separation agreement incorporated into the decree that the "husband shall pay all medical and dental bills of the children not covered by insurance" to be valid. The appellant maintained that the clause was ambiguous and uncertain and therefore unenforceable. Appellant relied on *Meyer v. Meyer, Loomstein,* and *Rodden v. Rodden,* all *supra.* But this court held that this case was governed by such cases as *Toomey, Payne,* and *Bryson, supra.* The clause to pay *all* medical and dental bills was held to be clear and neither ambiguous nor uncertain. "All that was needed to make that provision of the decree enforceable was evidence of the specific amount of such bills unpaid by appellant." 662 S.W.2d at 874.

In *Morovitz v. Morovitz,* 693 S.W.2d 189 (Mo.App.1985) this court recognized the inroads made upon the general principle of definiteness and certainty by incorporating a settlement agreement into the decree pursuant to *Bryson,* but held in the absence of a settlement agreement being incorporated into the decree, the traditional principles of definiteness apply. *Morovitz* did not consider or recognize the holdings in *Toomey, supra,* and other decisions.

Although *Bryson, Payne,* and *Witzke* dealt with a separation agreement incorporated into the decree, *Toomey* did not. And we fail to see any substantial distinction between the incorporation of a settlement agreement in the decree and one, which upon motion and hearing can be made specific and certain as to the amounts due.

■ As we perceive it, the present state of the law since *Bryson, Payne, Toomey* and *Witzke,* is that (1) if a dissolution or modification decree is uncertain or indefinite in the sense that it lacks pristine specificity and (a) a settlement agreement is incorporated in the decree which can make the decree certain by motion and hearing to determine the exact amounts due, or (2) the decree itself can be made certain by a motion and hearing to determine the exact amounts due by ministerial computation or evidence, the decree, upon being reduced to certainty, is sufficiently certain and definite so as to be enforceable. *Id certum est quod certum reddi potest*—that is certain which can be reduced to a certainty. However, if the decree is so amorphous, indefinite, vague and uncertain that it requires a subsequent hearing to determine its meaning and which involves discretion, the decree is void and unenforceable.

These distinctions manifest themselves when decisions such as *Bryson, Payne* and *Toomey* are compared with such decisions as *Newport v. Newport,* and *Tepper v. Tepper, supra,* The decrees in the latter two cases were so indefinite—"pay for college education" and make "all school payments for children"—so as to be unenforceable. Such latter decisions continue to have validity, when the decree is vague, indefinite and uncertain. Under such decrees, it cannot be reasonably determined what must be paid for "college education", or "all school payments." This may include tuition, books, room and board, travel, social activities and a host of other items.

■ Tested within the above principles, we examine the specific order entered by the trial court. The court ordered Paul to pay one-half the costs of a "vocational/technical school or one-half the cost of post-secondary education at a state supported college or university with respect to each of the parties' minor children." The costs shall include the cost of tuition, books, room and board. In the event the children choose to attend a private college or university, then the husband shall be responsible for one-third the cost of tuition, books and room and board, and the payments are to be made directly to the school, college or university.

We find this particular order too uncertain and vague to be enforceable. The order allows the children to attend any vocational/technical school, or any state supported college or university, and the husband is required to pay one-half of the costs of tuition, books, and room and board. Or the children can choose to attend a private college or university, and Paul is then responsible for one-third the costs. Presumably, Sheila in collaboration with

the children, has the choice to select any particular vocational, technical, state or private institution. We have no quarrel with the children and Sheila having that right.

The difficulty with the trial court's order is that it is too indefinite and uncertain. This is best seen by examining *Bryson, Payne,* and *Toomey, supra,* all of which allowed evidence to determine the exact amounts due on a judgment, when single computations could make the decree certain.

The order here, as distinguished from *Bryson, Payne,* and *Toomey,* does not set forth any limiting criteria as to costs at a specific vocational, technical school or state or private college or university. The costs of attending any such institution vary greatly, and, as such, the order is open-ended. In this sense it is vague and indefinite.

An order, however, may be fashioned substantially along the following lines, so as to make it readily certain and enforceable. For example:

"Husband shall pay one-half of the cost each year for each child attending a post-secondary college, university, or vocational/technical school, state or private, subject to the following limitations:

1) 'Cost' shall include tuition, fees, books, dormitory costs for room and board. It does not include room and board while residing with either parent.

2) The 'one-half' husband is to pay shall be the actual cost to the child, i.e. if child receives a scholarship or other aid which reduces cost, the 'cost' does not include the amount of such scholarship or aid. For this purpose, loans to the student shall not be considered a 'scholarship or other aid.'

3) The child must carry at least a minimum number of credit hours each semester which, according to the institution the child attends, constitutes a full load.

4) The maximum cost which husband shall be responsible for in any given school year will be one-half of the then cost for tuition, fees, books, and dormitory costs for room and board at the University of Missouri at Columbia, regardless of what institution the child attends.

5) The husband shall not be responsible for paying for more than eight semesters at a college or university."

Such an order would satisfy the principles stated above, and could subsequently be reduced to pristine certainty, so as to be enforceable. *Bryson, Payne, Toomey,* and *Witzke, supra.* For these reasons the present order is reversed, and the cause remanded for further proceedings.

Sheila argues that Paul agreed to pay for post-secondary education and thus "contracted" to pay such costs. However, we cannot find from the record that Paul "contracted" to pay for such costs. Rather, we find and hold that this specific order requiring Paul to pay for such costs is indefinite and uncertain.

Under the above principles, therefore, we conclude that the decree specifically involved here requiring appellant to pay one-half or one-third of post-secondary education expenses is uncertain. However, a proper order may be fashioned. Hence, the cause is remanded for further proceedings.

## V.

■ Next, appellant-husband contends that the court erred in ordering him to pay a portion of the costs of post-secondary education without abating his obligation to pay the increased amount of child support. He contends that the court did not give him credit for or abate child support payments during the periods of time when the sons would be residing away at college. He argues that he would be responsible for a portion of the costs of board and room while at college and would still be obligated for the increased child support; such a result places an unfair burden on him. He relies on *Bogusky v. Bogusky,* 710 S.W.2d 445 (Mo.App.1986), and upon § 452.340.1(2) R.S.Mo. as amended in 1988 which places a duty of support on both parents rather than, as in the previous law, placing primary responsibility for support on the father.

In *Bogusky,* the husband appealed an order modifying a dissolution decree. The husband's child support obligation was in-

creased from $220 per month to $800 per month. Prior thereto the decree was modified by consent to provide that husband would pay all the costs of the child's college education for four years. This court found that the trial court abused its discretion by increasing the child support during the period when the child is in college would force husband to pay "twofold" for the child's support, and suspended the increased child support during the period the child was enrolled in college.

We find *Bogusky* inapposite. In *Bogusky*, the father had agreed to pay all the college expenses of the child including tuition, room, board and books.

However, in view of our holding above that the order relating to post-secondary education is, in its present form, indefinite and uncertain, we conclude that until that part of the court's order relating to the children's post-secondary education is made sufficiently definite and certain, Paul cannot be required to pay a portion of the costs of post-secondary education. If the order, on remand is made sufficiently definite, Paul may, then, be required to pay a portion of the vocational or college expenses, without an abatement of child support during the period of time the children would be attending a post-secondary educational institution. Implicitly, Sheila, as the primary custodian, would pay the other portion of post-secondary education expenses, and would continue to pay for clothing, medical expenses, entertainment, transportation and other costs. These costs would continue even though the children attended college. In addition, Sheila must maintain a home during summers and vacations if the two sons attend a college away from home, or must continue the residence and costs, if the two sons remain at home while attending college. As the primary custodian receiving support payments, Sheila is responsible to pay the expenses of the sons in excess of an amount ordered.

This part of the court's order is contingent upon that part of the order which requires Paul to pay a portion of the post-secondary educational expenses which we find to be uncertain. Therefore, as to this part of the order denying any abatement for child support payments, the judgment is reversed and remanded for further proceedings, and upon the entry of an order relating to post-secondary education which is definite and certain, the court may then grant or deny an abatement for child support payments.

## VI.

■ As to Paul's third contention that the court erred in ordering him to pay an increased amount, from $51.00 to $71.00 per week per child, for child support, we find no error.

The amount of child support set by the trial court is subject to review only to determine whether the trial court abused its discretion or erroneously applied the law. *Moran v. Moran*, 681 S.W.2d 510, 513 (Mo. App.1984). Under § 452.370.1, R.S.Mo. 1988, the provisions of the decree may be modified as to support only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. *Foster v. Foster*, 673 S.W.2d 108, 110 (Mo.App.1984); *Bogusky, supra*, 710 S.W.2d at 446.

There was sufficient, substantial evidence to show changed circumstances. The two sons were growing up, they were passing from adolescence to adulthood; their expenses were greater, they engaged in sports, and Todd was driving an automobile, necessitating expenses and insurance. Paul earned approximately the same as he did at the time of the decree of dissolution, and Sheila's expenses for the children rose to $810 per month.

Under the circumstances, the court did not err. A change in circumstances may exist due to the increased expenses of growing children and inflationary trends. *Lyles v. Lyles*, 710 S.W.2d 440, 443 (Mo. App.1986).

## VII.

■ On Sheila's appeal, she first contends that the court erred in granting Paul the right to claim Todd as a dependent for income tax purposes.

This issue must be considered in light of the Tax Reform Act of 1984, 26 U.S.C. § 152(e)(2).

While decisions have stated that Missouri courts have jurisdiction over the question of which party receives the federal income tax exemption, *Roberts v. Roberts*, 553 S.W.2d 305, 307 (Mo.App.1977); *Niederkorn v. Niederkorn*, 616 S.W.2d 529, 533 (Mo.App.1981), these pronouncements were made under previous provisions of the Internal Revenue Code prior to the adoption by Congress of the Tax Reform Act.

In *Corey v. Corey*, 712 S.W.2d 708 (Mo. App.1986), a decision subsequent to the Act, this court stated that income tax exemptions are, or may be, a factor in determining the money available to pay support obligations, hence it would be appropriate for the parties, or the court in the absence of agreement between the parties to determine and express which party is entitled to the available exemption. This statement was made in the context where the husband argued on appeal that the trial court erred in failing to provide that he should have the right to claim both children as dependents on his income tax return, but the record did not disclose where the husband requested the trial court to determine this issue, and hence we held that this point was not presented below and not preserved for appeal. Although this issue was not ruled upon, we drew "the trial court's attention to Title 26 U.S.Code § 152" and Temporary Regulation 1.152–4T adopted August 30, 1984, which grants a tax exemption for dependent children to the *custodial* parent unless (1) a multiple support agreement is in effect (*see* § 152(c)); (2) a decree or agreement executed before January 1, 1985 provides that the custodial parent has agreed to release his or her claim to the dependency exception to the non-custodial parent and the non-custodial parent provides at least $600 of support to the child (*see* § 152(e)(4)); or (3) the custodial parent relinquishes the exemption by written declaration on a form provided by I.R.S.

In *Schneider v. Dougherty*, 747 S.W.2d 763 (Mo.App.1988), this court affirmed the trial court's order granting to the custodial parent the right to claim the children for tax purposes in accordance with 26 U.S. Code § 152(e). Under the new law, the custodial parent is entitled to the exemption with some exceptions. *See Seip v. Seip*, 725 S.W.2d 134 (Mo.App.1987).

Our research has failed to discover any authoritative Missouri decision discussing a trial court's order granting the right of the non-custodial parent an exemption for income tax purposes in light of 26 U.S.Code § 152.

In *Davis v. Fair* [1], 707 S.W.2d 711 (Tex. App.—Eastland 1986), the Texas court had occasion to determine whether a non-custodial parent was entitled to claim children as dependents. In *Davis*, as in the case at hand, the case arose out of an order modifying a decree. The order authorized the husband to be entitled to claim the two children as dependents for each taxable year beginning January 1, 1985, in which he shall have made support payments as ordered. The wife appealed and argued that the trial court erred in entering the order to modify because such order was in violation of Section 152. The Texas court agreed. The court noted that § 152 was amended in 1984, effective January 1, 1985, and that the relevant changes made to § 152(e) were in the area of the exceptions to the general rule that the custodial parent is entitled to an exemption. Prior to the 1984 amendment, Section 152(e) provided two means by which the non-custodial parent could acquire the right to claim his or her children as tax exemptions. The non-custodial parent could claim children as dependents if: (1) he or she was awarded the exemption under the dissolution decree and he or she paid at least $600 per year per child in support; or (2) the non-custodial parent paid at least $1200 per year per child and the custodial parent failed to show that he or she provided more support than the non-custodial parent. After the

---

**1.** Compare, however, *Hughes v. Hughes*, 35 Ohio St.3d 165, 518 N.E.2d 1213 (1988) where the court held that the tax code did not prevent the domestic relations court from making an award of exemption to the non-custodial parent.

1984 amendment to Section 152, subsection (e)(2) now provides the following means by which the non-custodial parent can acquire the right to claim a dependent: (1) if a multiple support agreement is in effect, (2) if the custodial parent signs a written declaration that he or she will not claim the child as a dependent and the non-custodial parent attaches such declaration to the tax return, the non-custodial parent can claim the child as a dependent; or (3) if a qualified pre–1985 instrument between the parents provides that the non-custodial parent shall be entitled to the deduction and the non-custodial parent provides at least $600 per year per child in support, the non-custodial parent can claim the child as a dependent.

The purpose of the 1984 amendments was both to remove the Internal Revenue Service from time consuming factual disputes over which parent met the threshold support requirements, and to add certainty to the process by "allowing the custodial spouse the exemption unless that spouse waives his or her right to claim the exemption." *Fullmer v. Fullmer*, 761 P.2d 942, 950 (Utah App.1988).

It is clear in this case that none of the exceptions embodied in § 152(e) exist. There was no multiple support agreement, Sheila did not sign any written declaration that she would not claim Todd as a dependent, and there is no qualified pre–1985 instrument between the parents. Exemptions provided in the taxing statutes are not to be extended beyond the language used. *Davis v. Fair, supra*, 707 S.W.2d at 716. Since Paul did not come within any of the exceptions provided in § 152, the trial court erred in attempting to grant him the privilege of taking Todd as an exemption for his income tax purposes.

However, several states have found that state courts have authority to order the custodial parent to execute consent forms assigning the federal income tax dependency exemption to the non-custodial parent. *See Fleck v. Fleck*, 427 N.W.2d 355 (N.D.

1988) and cases cited at 427 N.W.2d at 358; *Cross v. Cross*, 363 S.E.2d 449, 458 (W.Va. 1987).

There is no showing in the record that any of the exceptions embodied in § 152(e)(2) are applicable, including the exception that Sheila signed a written declaration that she would not claim Todd as a dependent. Therefore, the order is in error. For such reason, the cause must be reversed.

However, the trial court may, in view of the tax ramifications, wish to consider the amount of child support awarded to Sheila. We, therefore, remand the cause so that the court may consider and evaluate the amount of child support in view of the fact that the trial court awarded a tax exemption to Paul.

### VIII.

■ On Sheila's appeal, she next contends that the court erred in denying her attorneys' fees and in failing to order Paul to pay her reasonable attorneys' fees, considering all relevant factors including the parties' respective incomes.

Section 452.355 R.S.Mo.Supp.1988 provides that the court "after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under Sections 452.300 to 452.414 and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment."

In *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979), the Supreme Court held that the General Assembly intended that the trial court consider factors in addition to the financial resources of the parties. How the factors balance will vary from case to case, and only when the trial court is shown to have abused the broad discretion with which it is vested should its order be overturned. *Id.*, 590 S.W.2d at 919.

It is axiomatic that the trial court is granted wide discretion in determining who should pay attorney fees in this type of

action. *Viers v. Viers,* 600 S.W.2d 214, 216 (Mo.App.1980); *In re Marriage of Cella,* 679 S.W.2d 392, 395 (Mo.App.1984). To require one party to pay the attorneys' fees of the other necessitates a showing of unusual circumstances justifying deviation from the normal rule that each party should bear his own litigation costs. *In re Marriage of Hoglen,* 682 S.W.2d 179 (Mo. App.1984); *Lyles v. Lyles,* 710 S.W.2d 440, 444 (Mo.App.1986).

Considering all the relevant factors, including the financial resources of the parties, the court did not err in requiring each party to bear the attorney fees. Sheila's income approximated $385.00 per week and Paul's was $523.00. Considering the fact that Sheila was also earning overtime and earned money at a part-time job, the order was not an abuse of discretion.

Sheila contends that the court abused its discretion in not awarding her attorney fees because Paul's motion to modify was not well founded and she was forced to defend and assert a modification of the decree, and that the unfounded allegations constituted other circumstances which authorized an award. These were matters for the trial court to determine and to exercise its discretion in awarding attorneys' fees. We find no abuse of discretion in ordering each party to be responsible for attorney fees.

IX.

We have read the entire record, the briefs and the authorities relied upon and conclude: (1) that part of the trial court's order requiring the husband, Paul, to pay a portion of the costs for vocational, technical or college or university education is, in its present form, indefinite and uncertain; (2) that part of the order denying the husband any abatement of child support payments is erroneous since it is contingent upon the certainty and definiteness of that part of the order requiring the husband to pay for post-secondary education, (3) that part of the order granting the husband the right to claim one of the children as a dependent is in violation of the Federal Tax Reform Act, and (4) in all other respects the trial court did not err.

In view of these conclusions, we affirm in part and reverse and remand in part for further proceedings not inconsistent with this opinion.

Judgment affirmed in part and reversed and remanded in part.

SIMON, C.J., and DOWD, P.J., concur.