**Amy E. HENBEST, Petitioner–Respondent,**

v.

**Clifford Neal HENBEST, Respondent–Appellant.**

**No. 26229.**

Missouri Court of Appeals, Southern District, Division One.

June 7, 2005.

that should be considered in the award of attorney's fees.

James R. Sharp, Sharp & Bredesen, Springfield, for appellant.

Susan S. Jensen, Pratt, Fossard, Jensen & Masters, L.L.C., Springfield, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Clifford Neal Henbest ("Husband") appeals from a judgment entered in a dissolution of marriage case filed by Amy E. Henbest ("Wife"). He claims the trial court erred in awarding maintenance to Wife, in setting the maintenance amount, and in ordering the parties to pay a portion of the children's postsecondary educational expenses "based on each party's proportionate income as determined by the then applicable child support chart." We affirm the trial court's judgment as to the award and amount of maintenance, but reverse and remand with reference to the portion of the judgment requiring the parties to pay the children's postsecondary education.

We review a judgment of dissolution the same as we would any court-tried case. *McGowan v. McGowan*, 43 S.W.3d 857, 861 (Mo.App. E.D.2001). Therefore, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law.[1] *In re Marriage of Lindeman*, 140 S.W.3d 266, 270 (Mo.App. S.D.2004); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## MAINTENANCE

The trial court found that Wife lacked sufficient property, including property apportioned to her to provide for her needs, and was unable to fully support herself through appropriate employment, and that after considering all relevant factors including those set out in Section 452.335,[2] Husband was ordered to pay her maintenance of $550 per month. Husband attacks both the award of maintenance and the amount he was ordered to pay.

Pursuant to Section 452.335.1, the award of maintenance is a two-step process. First, the trial court must find that the party seeking maintenance "(1) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2)[i]s unable to support himself through appropriate employment ..." Second, the trial court is required to consider ten factors enumerated in the statute which includes balancing the reasonable needs of the spouse seeking maintenance with the other spouse's abili-

---

1. *Murphy v. Carron* interpreted Rule 73.01 which now appears in substantially the same form in Rule 84.13(d).

2. References to statutes are to RSMo (2000) unless otherwise indicated.

ty to pay. Section 452.335.2(8). "Once both steps have been satisfied, the statute provides that maintenance should be awarded 'in such amounts and for such periods of time as the court deems just.'" *Elrod v. Elrod,* 144 S.W.3d 373, 381 (Mo. App. S.D.2004); Section 452.335.2.

An award of maintenance rests within the discretion of the trial court. *In re Marriage of Gibson,* 23 S.W.3d 686, 691 (Mo.App. S.D.2000). Therefore, we review only for an abuse of that discretion and will not interfere with the award unless the amount of maintenance is patently unwarranted or is wholly beyond the means of the spouse ordered to pay. *In re Marriage of Buchholz,* 139 S.W.3d 607, 608 (Mo.App. E.D.2004). "Judicial discretion is abused when the court's judgment is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicates a lack of careful consideration." *Bonenberger v. Bonenberger,* 108 S.W.3d 729, 733 (Mo.App. E.D.2003). An award of maintenance cannot stand without evidentiary support. *Hammer v. Hammer,* 139 S.W.3d 239, 248 (Mo.App. W.D.2004). The burden of demonstrating error is on the party challenging the award. *Lindeman,* 140 S.W.3d at 272. Evidence is viewed in the light most favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion. *Id.*

In Husband's first point on appeal, he contends that it was error to award Wife maintenance in any amount because there was no substantial evidence upon which the trial court could have found that Wife was unable to meet her own reasonable needs. In his second point, he contends that the trial court erroneously set the amount of maintenance owing to Wife at $550 per month in that he is not capable of paying that amount, and in any event her true monthly deficit was at most $200. Because consideration of these two points overlap, we consider them together.

Wife is currently employed at the U.S. Attorney's Office as an office automation assistant, where she assists attorneys with typing, copying, shredding and filing documents. Wife earns a little over $25,600 a year, which is the most income she has ever earned. Prior to 1999, Wife did not work full-time outside the home, but instead helped raise Husband's child from a prior marriage, and twins born of this marriage in November 1988.

During trial, Wife submitted an income and expense statement in which she claimed a net monthly income of $2,282.22, including $820 she had been receiving in child support from Husband since their separation. Wife testified that her expenses totaled $3,126.90 per month, leaving a deficit of $844.68 each month. Wife's list of expenses, however, included duplicated claims for health insurance ($50.92 for health and dental insurance, $64 for health, accident and dental insurance, and $25 for Cobra dental). Wife admitted that the claim for $64 was a mistake.

Husband also claims that Wife's income and expense statement was inaccurate with regard to her monthly mortgage responsibility. He first asserts that Wife admitted at trial that she could save $253.90 per month by refinancing the mortgage on the marital home. Husband and Wife previously agreed that she would receive that property, valued at $103,000, and would be responsible for the $52,752.21 mortgage on the property. The monthly mortgage payment on that property is $730.90.

Wife's testimony concerning refinancing the marital home included:

Q: Okay. Right now I believe you say you have a house payment of around $730; is that correct?

A: Yes.

Q: Now, later on there will be testimony that in order to refinance your house of $53,000, at six percent, which is available right now, that would reduce your house payment down to $342 a month instead of $731 a month. Are you aware of those general figures that we've been talking about?

A: Yeah.

Q: And have you checked into that about getting a refinancing arrangement?

A: I've talked to a realtor, yes.

Q: Okay. And taxes and insurance on your home are $135 a month. Are you aware of that? Again, there will be testimony of that later on.

A: Yes.

Q: Okay. So if you add 342 to the 135, you come up with about a 477 as a payment that you'd be making per month for your house instead of the $731 payment if you did refinance it.

A: Right.

There was no evidence that Wife would qualify to refinance her mortgage or that she was guaranteed the rate quoted to her at trial. Further, there was no evidence concerning any of the initial costs associated with refinancing a home mortgage. We find that as to Wife's ability to refinance her mortgage, there was no inconsistency as to her income and expense statement and her testimony.

Next, Husband asserts Wife overstated the amount needed to maintain and repair the home. Wife listed maintenance and repairs on the residence at $50 per month. She testified that several items need to be repaired in the forty-year old home; the driveway and front walk need to be resur-faced, there are holes in the sheet-rock where wiring work has been done and never repaired, the downstairs carpet needed to be replaced, a couple of broken windows and a broken bedroom door needed to be replaced, as well as some plumbing problems, there is water damage in the basement, the garage door is not working properly, and part of the siding on the house is melted from a barbecue grill. She admitted that she spent a total of $125 on home maintenance in the prior year rather than the $50 per month stated in her income and expense statement. However, Wife explained that she had not had the money to pay for the needed repairs and maintenance. Husband also admitted that the house was in need of repairs.

Husband also claims that Wife's claimed expenses for pet care are overstated in that she has only spent $70 in the past year rather than $60 per month as stated in her income and expense statement. At trial, Wife was asked if she would be surprised that there was only one charge to the veterinarian in the past twelve months:

Q: Are you—Would you be surprised if they only had one charge in the last 12 months of $70 for vaccinations?

A: Well, and I just was there yesterday for $112. So—

Q: Okay.

A: And they're not taking into consideration the flea treatment, the heartworm pills and any other—and the prescription dog food that we—we're needing to buy. They haven't—They don't keep track of that and—and other than the—I mean, they don't have that on their expenses for me. But I count those as part of my expense.

■ Lastly, Husband contends that the deductions claimed by Wife for life insurance, thrift savings plan and flex fund of approximately $150 per month are volun-

tary on her part. Husband does not provide any citation to authority as to why Wife's life insurance, thrift savings plan and flex fund are unreasonable. He merely asserts they are voluntary. Husband's argument must show how the facts of his case and the principles of law interact. *Boyd v. Boyd,* 134 S.W.3d 820, 824 (Mo. App. W.D.2004). "Arguments without authority present nothing for review." *In re Kreutzer,* 50 S.W.3d 334, 338 (Mo.App. S.D.2001).

Wife's expense statement also included $160–$210 for automobile expenses. Wife's previous automobile was totaled in a wreck, and she was driving a car borrowed from her parents that she would eventually need to replace. Contrary to Husband's contention, Wife testified that she was not aware of any intention by her father to give the car to her. In her expense statement, Wife did not include payments for an auto loan, but the evidence indicated that an auto loan for a compact car comparable to the one that was totaled would cost Wife between $275 to $290 per month.

After deducting the $64 duplication for health insurance, Wife's expenses still exceed her available monthly resources. Accordingly, we cannot conclude that the trial court erred in determining that Wife was unable to fully support herself through appropriate employment.

■ Husband also claims that the trial court erred in setting the amount of the monthly maintenance, i.e. $550 because he is not capable of paying that amount. It is true that an award of maintenance should not exceed a paying spouse's capacity to provide. *Thomas v. Thomas,* 76 S.W.3d 295, 302 (Mo.App. W.D.2002).

Husband works at Southwestern Bell Telephone doing installation and repair work. Husband's base salary, before overtime, is $26 per hour or $54,080 annually. In the past three years, Husband has worked considerable amounts of overtime, increasing his income to $66,336 in 2001, $73,170 in 2002, and $80,470 in 2003. Husband's supervisor testified that his large amount of overtime was a result of the company not replacing retired employees. This fact, coupled with the considerable storm damage in the past year, required Husband to work many hours. The supervisor further testified that this trend would not continue in the future because Southwestern Bell intended to cut back overtime so that it would amount to no more than a single-digit percentage of the employee's base salary. Accordingly, Husband contends that his overtime income will not be as great in the future.

The trial court concluded that "the most equitable way to arrive at an income figure for [Husband] for the purpose of analyzing the maintenance issue and for the purpose of child support calculation is to average the last three calendar years, which results in average annual income of $73,305.00. This computes to $6,109.00 per month." "[C]ourts must look at past and present income *in toto* and consider a party's complete earning history as evidence of ability to pay maintenance." *In re Marriage of Baker,* 986 S.W.2d 950, 955 (Mo.App. S.D. 1999). Averaging income to project a continuing level of income is permissible. *In re Marriage of Kohring,* 999 S.W.2d 228, 234 (Mo. banc 1999). We are unable to conclude that the trial court erred in determining that Husband has the financial ability to satisfy the maintenance awarded to Wife.

Husband also contends in his point relied on that the maintenance award should be reduced by the items Wife overstated in her income and expense statement with the result that her monthly deficit was actually no more than $200 per month. The items he complains about are the

amounts of $253.90 he claims Wife could save on her monthly mortgage payment by refinancing the house, $64 in duplicated health insurance, $60 pet care expense, $50 house maintenance expense, and $150 voluntary deductions from her income. These have all been reviewed in our discussion above and, with the exception of the duplication of $64 for health insurance, found to be without merit.

In the argument section of Husband's brief under this point, he also complains about the inclusion of expenses for the children in Wife's income and expense statement and thus the consideration of those factors in determining the appropriate amount of maintenance to be paid to Wife. This contention, however, was not included in Husband's point relied on. The issue presented on appeal is that which is stated in the point relied on, and if it is not contained therein it is considered abandoned. *Waldorf Inv. Co. v. Farris*, 918 S.W.2d 915, 918 (Mo.App. S.D. 1996). Points one and two are therefore denied.

### POSTSECONDARY EDUCATION EXPENSE

In his final point, Husband contends that the trial court erred in ordering the parties to "pay a portion of the child(ren)'s postsecondary educational expenses based on each party's proportionate income as determined by the then applicable child support chart." He argues that this portion of the judgment was too vague to be enforced as there is no indication what percentage of the children's college expenses should be paid by each party; there is no indication as to what the financial ability of the parties will be when the children go to college; the provision cannot be enforced by a ministerial computation; and the matter is more suitable for a later motion to modify.

This portion of the judgment was contained in a parenting plan adopted by the trial court. It provided, in pertinent part:

1. Postsecondary Educational Expenses. With regard to the postsecondary education expense of the child(ren)-defined as postsecondary college, university, vocational, or technical school whether state or private-each party will pay a portion of the child(ren)'s postsecondary educational expenses based on each party's proportionate income as determined by the then applicable child support chart.

   a.) "Postsecondary educational expenses" include the then current cost of tuition, fees, books, and costs for room and board. It does not include room and board while residing with either parent.

   b.) The "postsecondary educational expenses": that the parents are responsible for paying are the actual cost for a child—i.e., if a child receives a scholarship or other aid that reduces postsecondary educational expenses, then the parties obligation to pay "postsecondary educational expenses" will also be reduced. For this purpose, loans to a child are not to be considered a scholarship or other aid.

   c.) A child must carry a minimum of at least twelve credit hours each semester.

   d.) The maximum cost that the parents will be responsible for in any given school year will be the then current cost for tuition, fees, books, and costs for room and board as an in-state student at the University of Missouri–Columbia, regardless of what institution the child attends.

e.) The parents will not be responsible for the cost of more than eight semesters at any postsecondary school for a child.

f.) A child is expected to apply for all available grants and scholarships to help defer postsecondary educational expenses.

g.) A child is expected to work during the summer vacation to help defray some of the expenses for the following year.

Husband relies heavily on *Echele v. Echele*, 782 S.W.2d 430 (Mo.App. E.D. 1989), in support of this point. *Echele* involved a modification of a dissolution decree in which the father was ordered to pay one-half of the cost of vocational/technical school or one-half of the cost of postsecondary education at a state supported college or university for each of his children. *Id.* at 433. It also provided that if any of the children chose to attend a private college or university, father would be responsible for one-third of the cost of tuition, books and dormitory fees of that college or university. *Id.* The father contended on appeal that the order was not based on substantial evidence and was an erroneous application of the law in that, among other reasons, it was dependent on future contingencies, was indefinite and uncertain, and was void and unenforceable because subsequent hearings would be required to determine the amount owing. *Id.* In agreeing that the order was too uncertain and vague to be enforceable, the appellate court undertook an extensive review of the law in this area. *Id.* at 434–37.

The *Echele* court noted that the general rule is that a judgment must be definite and certain as to amount without requiring external proof of another hearing in order to be enforceable. *Id.* at 434. It also noted, however, that those principles have been eroded in several respects. *Id.* After

analyzing cases such as *Toomey v. Toomey*, 636 S.W.2d 313 (Mo. banc 1982), *Payne v. Payne*, 635 S.W.2d 18 (Mo. banc 1982), and *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App. E.D.1981), the *Echele* court concluded that:

> (1) if a dissolution or modification decree is uncertain or indefinite in the sense that it lacks pristine specificity and (a) a settlement agreement is incorporated in the decree which can make the decree certain by motion and hearing to determine the exact amounts due, or (2) the decree itself can be made certain by a motion and hearing to determine the exact amounts due by ministerial computation or evidence, the decree, upon being reduced to certainty, is sufficiently certain and definite so as to be enforceable.... However, if the decree is so amorphous, indefinite, vague and uncertain that it requires a subsequent hearing to determine its meaning and which involves *discretion,* the decree is void and unenforceable.

*Id.* at 436 (emphasis added). Accordingly, the court held that the order that the father pay one-half of the cost of vocational/technical school, one-half of the cost of postsecondary education at a state supported college or university, or one-third of tuition, books and dormitory fees of a private college or university was too uncertain and vague to be enforceable in that it did not set forth any limiting criteria as to costs at a specific college or university, leaving it open-ended. *Id.* at 436–37. In doing so, it suggested wording that it said would remedy the problems identified in that case. *Id.* at 437. The suggested order specified, among other things, that the father would be required to pay one-half of the costs of postsecondary college, university or vocational/technical school, state or private; it defined the meaning of

"cost" and "one-half"; and it specified that the maximum cost he would be responsible for would be one-half the cost at the University of Missouri at Columbia regardless of the institution attended. *Id.* at 437.

The distinction between the suggested order in *Echele* and that entered in the instant case is that here the percentage of costs required to be paid by Husband is not specified. Rather, that is left to a future determination based upon application of "the then applicable child support chart." Many questions are left unresolved by that phrase such as the source or identity of the chart to be utilized; what time frame is referred to by the phrase "then applicable" child support chart; and when that calculation is to be made, i.e. when the children start their postsecondary educations, at the beginning of each school year, or otherwise.

■ Assuming that the "then applicable child support chart" refers to the Form 14 chart in use at that time, the calculation of Husband's obligation will involve more than a mere ministerial calculation or one that automatically applies evidence from a third party, i.e. what are the costs of tuition, fees, books, and room and board at the institution being attended or, at the maximum, such costs for in-state students at the University of Missouri–Columbia. Remembering that *Echele* held that, other than a situation where a settlement agreement is incorporated into a decree, a decree is sufficiently certain and definite so as to be enforceable if it can be made certain by motion and hearing to determine the exact amounts due by ministerial computation or evidence, but not if that determination involves the exercise of discretion by the trial court, it is necessary that we determine if Form 14 calculations of income involve the application of trial court discretion. *Id.* at 436. In doing so, we must refer to the present version of

Form 14 for we do not know what provisions may be contained in future ones; another indication of the uncertainty inherent in the contested provision.

The calculation of income for the purpose of determining the presumed correct amount of child support using Form 14 can involve the exercise of discretion. Thus, in *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 875 n. 10 (Mo.App. W.D.2001), the appellate court noted that the trial court, in its discretion, may choose to ignore income history and look at income from a single year if it finds that amount to be an accurate predictor of income. Likewise, inclusion of bonuses and other employment related benefits in gross income for the purpose of computing child support under Form 14 is discretionary. *Bridgeman v. Bridgeman,* 63 S.W.3d 686, 690 (Mo.App. E.D.2002). The trial court is also permitted, in proper circumstances, to impute income to a parent in calculating child support. *Quackenbush v. Hoyt,* 940 S.W.2d 938, 942 (Mo.App. S.D. 1997). The decision of whether to impute income involves the exercise of discretion. *Stanton v. Abbey,* 874 S.W.2d 493, 499 (Mo.App. E.D.1994). In fact, in this case the trial court applied its discretion in arriving at a different income figure for Husband than that claimed by him. Thus, the determination of income for the purpose of making the calculations under the present Form 14 involves the exercise of discretion. Accordingly, if the present Form 14 were utilized to determine the proportionate incomes of the parties in this case, those calculations would not necessarily be restricted to mere ministerial computations even after a hearing.

■ The judgment here relating to college expenses is too vague and is unenforceable as framed. Husband's third point on appeal has merit and the provisions of the judgment relating to postsecondary education are reversed. Husband

argues that if we determine that these provisions must be reversed, we should merely reverse them and leave the issue for determination at a later date on a motion to modify. Wife, on the other hand, argues that if these provisions are reversed, the matter should be remanded to the trial court for further proceedings at this time. We agree with Wife in that respect.

In *In re Marriage of Eskew*, 31 S.W.3d 543, 547 (Mo.App. S.D.2000), this court held that a judgment entered in a modification action relating to the father's responsibility for postsecondary education expenses was premature because the evidence did not establish, among other things, what the expenses would be when the child would enter college more than three years later, or what the income would be for each parent at that time. In doing so, we noted *Tuning v. Tuning*, 841 S.W.2d 264, 267 (Mo.App. S.D.1992), where it was said:

> Consideration of a child's college expenses need not wait until he has entered college. In fact, there may be circumstances where, unless those expenses are considered in advance, the child could not attend college. An increase in child support for such future expenses can be made effective at a future date and contingent upon the child's entry into college.

We concluded that the parties in *Eskew* could seek a ruling from the trial court on the issue of postsecondary education expenses if the child, upon nearing graduation from high school, decided to attend college. 31 S.W.3d at 548. Here, however, the children are now nearing college age. Uncertainty with regard to such expenses would not be in the best interests of the parties or children. *Ponce v. Ponce*, 102 S.W.3d 56, 64 (Mo.App. W.D.2003). Accordingly, rather than relegating this issue to a future motion to modify, we reverse the portion of the judgment relating to the payment of postsecondary education expenses and remand to the trial court for further proceedings and entry of an amended judgment in that regard, not inconsistent with this opinion. The judgment is otherwise affirmed.

PREWITT, J., and RAHMEYER, J., concur.